JULIA THOMAS, ADMINISTRATRIX, V. A. S. CHURCHILL, ADMINISTRATOR.

FILED MAY 6, 1896. No. 6270.

1. Petition in Error: WAIVER OF APPEAL. Where a party presenting a case to this court for review files a petition in error therein, he will be presumed to have elected to proceed by error and not by appeal.

2. Statute of Frauds: PAROL AGREEMENT TO CONVEY LAND. A parol agreement by a grantee, to reconvey real estate to his grantor, is within the statute of frauds and does not create an express trust in such real estate in favor of the grantor.

3. ———: ———: PLEADING. It is not necessary that the existence of a parol contract be denied in pleading, in order to render the defense of the statute of frauds available, but the pleader may admit the contract and yet plead and insist upon the statute and its application thereto.

4. ———: ———: EVIDENCE: OBJECTION. The failure to object, on a trial, to the introduction of evidence of a parol agreement to reconvey real estate will not amount, under the practice of this state, to a waiver of the right to invoke the statute of frauds as to such agreement where the statute has been properly pleaded as a defense.

ERROR from the district court of Washington county. Tried below before SCOTT, J.

*Charles Ogden*, for plaintiff in error.

*A. S. Churchill*, contra.

HARRISON, J.

The original plaintiff in this cause, John D. Thomas, and one of the defendants, John P. Thomas, have died

during its pendency, and the action has been revived in the name of Julia Thomas, administratrix of the estate of the deceased plaintiff, and against the administrator of the deceased defendant. A petition was filed March 7, 1891, and an amended petition May 25, 1891, in which it was stated, in substance, that the plaintiff was, and for many years had been, the owner of 200 acres of land in Washington county, Nebraska, giving a specific description of the land, which we omit; that he had been a resident of this state during the year 1856, and of Washington county until about 1872, when he removed to Omaha; that about the year 1875 the plaintiff was induced by fraud, misrepresentation, and deception to marry with one Sylvia Preston, and soon after such marriage became convinced that the woman had formed such marriage relation with him for the purpose of assisting her in a fraudulent purpose to obtain as much of his money and property as possible; that in the course of numerous litigations with her, or her relations, friends, and accomplices as opponents, he had lost much money and a large and valuable piece of land, and that he had been unsuccessful in a number of other lawsuits in which he had been a participant, and had become imbued with the idea that he could not obtain justice, and that he would lose or have all the remainder of the property which he owned taken from him, "and said nephew, John P. Thomas, having personal knowledge of many of the plaintiff's said annoyances and experiences in the courts of Douglas county and citizens above referred to of Douglas county, and being a young unmarried man, poor but honest, as the plaintiff then believed, professed great sympathy for the plaintiff in his above mentioned troubles, and proffered his assistance as a trusted relative in helping the plaintiff to place his property, then remaining, in such shape as that no more of it would be lost to the plaintiff, and so that plaintiff, at any time he designed, might have it returned to him; and the plaintiff, believing in the honesty and integrity of his said nephew, the defendant

John P. Thomas, and believing that such offer was made in good faith and for the benefit of this plaintiff, and to enable the plaintiff to save to himself said property, the plaintiff was induced to and did accept the proffered assistance of his said nephew in that behalf, which proffered assistance, as plaintiff afterward learned, was in bad faith, and his statements of sympathy for the plaintiff and of his desire to assist said plaintiff to save said property for his own use and benefit were false and made with the fraudulent design of inducing plaintiff to entrust to the defendant John P. Thomas the title to said property, that he, John P. Thomas, might thus be enabled to defraud plaintiff out of the same, and without any intention on the part of him, the said John P. Thomas, to reconvey the same to plaintiff; that on the 5th day of February, 1884, the plaintiff, confiding in the said John P. Thomas, and believing that he was sincere in proffered assistance as above stated, and with the verbal understanding and promise of the said John P. Thomas that he would at any time thereafter, at the request of the plaintiff, reconvey to the plaintiff any and all of the said above described real estate, and the plaintiff, believing it was a matter of prudence for him, plaintiff, so to do, by deed of the date last aforesaid conveyed to said defendant John P. Thomas all of the said above described real estate, to be held, as above stated, in trust, for the sole benefit and use of this plaintiff; that although said deed recited a consideration, yet, in truth and in fact, there was no consideration therefor, and no money was paid, or intended to be paid, in consideration for said deed, and no consideration has since been paid by said John P. Thomas, or any one for him, for said deed; and plaintiff avers that the promise by which the plaintiff was induced to make the said deed to the defendant John P. Thomas, as above stated, was in bad faith and false, and made with the intent on his part to deceive and defraud this plaintiff thereby; that at the date of said conveyance by plaintiff to said defendant John P. Thomas

the said defendant was a poor man and without any means with which to pay any consideration for such transfer; that such deed was not made as a gift nor as an advancement to said John P. Thomas, but was made and accepted for the sole benefit of plaintiff, as above stated; that said deed was recorded in the county clerk's office of Washington county, Nebraska, on the 16th day of February, 1884, at page 345 of book 19 of deeds; that plaintiff, ever since the making of said deed, has been in possession of all of said real estate, has paid all taxes and assessments thereon, has collected the rents thereof, and all done with full knowledge of the said defendant John P. Thomas, and without any protest on his part against the same or any claim on his part as to any personal interest therein, until about the 21st day of February, 1891, upon which date the said defendant John P. Thomas undertook to assert his title to said property and interfered with the tenants placed on said land by the plaintiff by notifying said tenants not to pay rent to this plaintiff; that John P. Thomas, in further pursuance of his fraudulent design, on the 21st day of February, 1891, conveyed, by deed of quitclaim, the lands described to one Henry Webber, for an alleged consideration of $6,000; that there was in fact no consideration passed from Webber to John P. Thomas, and that, as a part of the scheme, Webber, of date February 24, 1891, executed and delivered to John P. Thomas a mortgage on the lands in question, purporting to secure the payment of $5,200, which was duly recorded, and that the same was in truth entirely without consideration and a sham.    The prayer of the petition was for the declaration of a trust in favor of plaintiff in the premises described therein, and the annullment and cancellation of all and singular the various instruments of conveyance referred to in the petition; "that the plaintiff be reinvested of his former title in and to all of the hereinbefore described real estate." It was also asked that Webber be enjoined from transferring the property; that John P. Thomas be enjoined from dispos-

ing of the mortgage executed by Webber or the notes, the payment of which it purported to secure, and that both defendants be enjoined from in any manner interfering with the tenants of plaintiff then occupying the land, and for such other, further, and different relief as justice and equity would entitle him to receive.   John P. Thomas, defendant, answered and admitted that he was the plaintiff's nephew, and that on the 5th of February, 1884, the plaintiff conveyed to him the real estate mentioned in the petition, and stated that the conveyance was effected by warranty deed; denied that the transfer was without consideration and averred that it was for a good and valuable consideration, and not in trust, but for the use of defendant, his heirs and assigns, and as to the verbal promise to reconvey the land to plaintiff, as alleged in the petition, pleaded that it was void and of no effect under the statute of frauds; and further, that the plaintiff was estopped by the covenants and recitals in the warranty deed, by which he conveyed the real estate to defendant, from averring or proving any trust relation as arising from the transaction, in contradiction of the terms of the instrument, and estopped from claiming any right or interest in the premises.   It was admitted that plaintiff had paid the taxes assessed against the land, but denied that the plaintiff had been in possession of the premises, either himself, personally, or by tenants; and further answering the fifth paragraph, it was pleaded that on or about the date the land was conveyed by plaintiff to the answering defendant, the defendant executed and delivered to plaintiff a power of attorney, by which the plaintiff was authorized to lease the premises and collect the rents thereof, and that, acting under and by virtue of the authority thus granted, the plaintiff leased the land, collected the rent moneys, and with it, or a portion of it, paid the taxes.   It was further answered by this defendant: "The defendant admits that on the 21st day of February, 1891, he conveyed the premises to Henry Webber for a consideration of $6,000, and

that Webber executed and delivered to the answering defendant a mortgage to secure the payment of the sum of $5,200, a part of the purchase price of the land." There were some other matters pleaded in this answer, but we need not notice them here. The answer of Webber was very similar in the main to that of his co-defendant, which we have just outlined, and admitted the conveyance of the land by John P. Thomas and the execution of the mortgage for the unpaid portion of the purchase price, and that Webber had notified the tenants who were occupying and using the land not to pay rent to the plaintiff, and averred that the purchase of the land by this defendant was for a good and valuable consideration, and without any knowledge on his part of any right, or claim of right, of the plaintiff in or to the premises. The issues were tried to a judge, who resolved them in favor of the defendants, and after hearing and overruling a motion for new trial in behalf of plaintiff, rendered a judgment or decree for defendants. A petition in error has been filed in this court on behalf of the unsuccessful party in the trial court for the purpose of having the proceedings in that court reviewed.

The parties have entitled the case as here an appeal, and have treated it as such in the briefs filed. It has been held that where the party bringing a case to this court files a petition in error, he will be presumed to have elected to proceed by error and not by appeal (*Beatrice Paper Co. v. Beloit Iron Works*, 46 Neb., 900; *Monroe v. Reid*, 46 Neb., 316; *Woodard v. Baird*, 43 Neb., 310); but it will make no difference in this case, as the points discussed all come under the questions of the sufficiency of the evidence to sustain the findings and the judgment, and what are the rules of law applicable to the facts as developed by the testimony during the trial and governing the disposition of the cause, and did the trial judge rightly select and apply them.

It will be remembered that the plaintiff pleaded that it was because he feared a loss of his property, and, in an

effort to avoid such loss, that he conveyed the property to his nephew. In his testimony he gave an entirely different reason for making the transfer. We will give it as it appears in the record:

Q. Now you may tell the court what the circumstances were attending the execution of the deeds spoken of in the petition and the answer herein of this land, to which your attention has been called, to John P. Thomas, about the year 1884.

A. In the latter part of December, 1883, or else in January, 1884, I had a little interest out at Fremont and I went out there and in the evening I took a train and went to Blair. It was a winter evening and pretty dark. I had supper, and after supper I stepped out on the sidewalk, and, as I usually go, I had both hands in my pockets. I took six or seven steps from the door when I stepped on the sidewalk, and I stepped in a hole with the left foot and didn't reach no ground, and I fell against the edge of the planks with the fourth and fifth ribs, and it pretty nearly laid me out. I came down to Omaha here the second day after and I treated with three different doctors, and finally I went to the hospital and staid there some two weeks and I was spitting considerable blood, and for a long time when I went up steps I had to drag my left foot behind and when I went down steps I had to swing it forward. When I was in bed I had a hard time to turn over one way or the other, and at the time I didn't know what would become of me. I had no friends and no relatives here except this nephew.

Q. You mean John P. Thomas?

A. Yes, and I called him and told him the conditions, and he said he would take care of anything I would put over in his name and would return it any time I would make a demand, and afterwards these papers were made out to that effect.

Whatever may have been the reasons of the plaintiff for so doing, on the 5th day of February, 1884, he conveyed by warranty deed to his nephew, not only the land

in dispute, but some other property. The plaintiff couldn't recollect whether the nephew was present when the deed was executed or not, but thought he was. The nephew was positive that he was not, and that he came from St. Louis to Omaha, probably in response to a letter from plaintiff, arriving in the latter city on the evening of the 5th of February, and during the next day, the 6th, he executed and delivered to his uncle a power of attorney authorizing him to take entire charge of and control all the property belonging to the nephew in Douglas county and Washington county. To refer again to the deed from the uncle to the nephew, no person could or did tell just exactly how or when it was, if ever, given into the hands of the nephew, but it was, according to the indorsement made on it by the county clerk of Washington county, filed with him, presumably for record, February 11, 1884. It was disclosed by the evidence that at the time this and the other land in Washington county was conveyed by the plaintiff, he also conveyed to his nephew some property he owned situate in Douglas county, some of it in Omaha. In the year 1887 the plaintiff requested the defendant to reconvey the land, and in regard to how this was done, or, more particularly, who furnished the description of the property to be included in the deed then prepared and afterwards executed, the plaintiff testified as follows:

Q. Is it not a fact that you went into the office of Mr. Breen and told him to prepare a deed from John P. Thomas to yourself, and you gave him a description of the land that you wished to be included in the deed, including the "old homestead place," as you call it, in Washington county, the lots on Cuming street and Eighteenth and Webster, and didn't he prepare a deed for you at that time?

A. Is that all he prepared? Didn't he put in ten acres up at the fort, too?

Q. And Mr. Breen put into the deed a description of all the property that you gave him to include in the deed?

A. Yes, and he put it nearly all in his deed, too.

Q. And after the deed was prepared you had the defendant go with you up into Mr. Breen's office and execute that deed, didn't you?

A. I don't know. I can't tell you.

Q. And he did sign and execute the deed before Mr. Breen, conveying all the property back except what is in controversy in this case?

A. The deed seems to be signed by him, yes.    *    *    *

Q. And that transfer back to you was made in pursuance of what you have stated here, the arrangement for all the property?

A. Yes.

Q. At that time he was still on good terms with you, was he not?

A. The best of terms.

Q. The relations between you and him were the same as before?

A. Yes, as good as ever.

Q. And he made no objection to transferring that property back?

A. Just as good as ever.

Q. At the time that deed was made, could you have included all this other land without any objection from him at that time, if you had seen proper to do so?

A. Yes, I think I could.

Q. Was he making any objection at that time about transferring back any of this property?

A. Not any that I know of.

The nephew testified on this subject as follows:

A. He came to me in 1887 and asked me if I would deed the property back to him, and I said, "Yes, go ahead and have your papers made out."

Q. After that did he inform you that the papers were made out and where they were?

A. Yes, sir. A day or two after that I met him on the street and he said, "I got them deeds made now." I said, "All right." He said they were up in Breen's office. Says

I, "What have you got in that deed?" and he said "Webster street, Cuming street, and the homestead."

Q. What did he mean by "homestead"?

A. That was the 160; he told me the 120 and 80.   He said, "What I showed you in 1887."   He said, "You been pretty square with me and I don't know what I do without you," and I could keep that.  We went to Mr. Breen's office and I looked the deed over and signed it.

Q. Has he ever asked you for a deed of it since?

A. No, sir.

The plaintiff testified that there was a direct promise on the part of his nephew to reconvey the property whenever requested so to do; that there was nothing paid for the property.   The nephew stated in his testimony that he did not pay anything for it.   In the cross-examination of the plaintiff it appears:

Q. You say, then, that the only purpose you had in deeding to him this land, making him a warranty deed to it, was so he would have it in case you didn't recover?

A. Yes, sir.

In the testimony of the young man he was asked and answered as follows:

Q. You may state if you had any conversation at the time of making the deed, and prior thereto, in relation to the making of it.

A. No, sir.

Q. You say that he just gave it to you?

A. I didn't know that the deed was made to me until after it was done.   I knew nothing about it until after I came up here.   [Referring, evidently, to his coming from St. Louis to Omaha at or about the time of the making of the deeds.]

It was shown that the plaintiff, in another action between him and his nephew, had testified in regard to the transfer of the land as follows:

Q. You may state to the court whether you discussed these litigations you had or was having with him.

A. Yes, when I lost the land and had trouble with the

woman and they took everything, he said I should sign things over to his name; that I could hold nothing then. It was done at that time, I think in 1884. I signed everything over to him, everything I had, but while that was done I asked him, I says, "John you go on the road and so on; something may happen to you and then I would have some trouble." There was some papers drawn up so good as he could do them in his handwriting, that I should receive $500 a month if anybody would trouble me, in his own handwriting. Of course I signed that. It was pretty hard. We agreed that I should sign it over to him and he would hold it for me.

We have thought best to set forth this much of the testimony in order that its general drift and import might be understood. It is claimed by counsel for plaintiff that "there was no delivery of the deed made in 1884 by plaintiff to his nephew. It was a trust deed, if anything." The question of a delivery of a deed was not of the litigated points in the case. The transaction of 1884 was in all respects, both in the pleading and in the evidence of plaintiff, treated and considered as a full and completed transfer and conveyance of the property to his nephew. It was at all times recognized as such by the plaintiff. Whether the deed of 1884 had ever been delivered by the plaintiff to his nephew or not, or whether it had in one way or another, was not questioned. The deed was filed for record by someone and duly recorded, and the plaintiff avers and proves a full and complete transfer of the title and transfer of the property to his nephew, and no question was made of the delivery of the deed or any other act necessary as an element or part of such completed conveyance. The petition in this case alleged a conveyance of the property in controversy in trust for the grantor, arising out of a promise by the grantee to reconvey to grantor, the promise being verbal, and sought to have a trust resting entirely in parol declared and enforced. It was within the statute of frauds as enacted by this state, and hence without the province of the court

to entertain or enforce. A parol agreement by a grantee to reconvey real estate to his grantor does not create an express trust in favor of the grantor in such real estate. (*Dailey v. Kinsler*, 31 Neb., 340; *Hansen v. Berthelsen*, 19 Neb., 433; *Moore v. Horsley*, 40 N. E. Rep. [Ill.], 323; *Pillsbury-Washburn Flour Mills Co. v. Kistler*, 54 N. W. Rep. [Minn.], 1063.)

But it is insisted that the grantee, in this case the nephew, had recognized or admitted the trust by reconveying a portion of the property, and that it is a fair deduction to be drawn from his testimony that a promise to reconvey existed or had been made. We cannot give the fact of the reconveyance of a portion of the property such force as is claimed for it by counsel. It may be said that it was probably a strong circumstance tending to establish the existence of a promise to reconvey, but not so conclusive as to be construed or held to be an admission of it, nor do we think his testimony can be construed as an admission. The point which counsel urged in this connection is that if the defendant admitted the agreement, that no reason then exists for not enforcing it, and the courts will give it force notwithstanding the statute; but the preponderance of authority is to the effect that the party may admit the contract and yet plead and insist on the statute and its application. (22 Am. & Eng. Ency. of Law, 979, and cases cited; 2 Story, Equity Jurisprudence [13th ed.], secs. 757, 758.)

It is further urged that the plaintiff was allowed to testify to the terms of the verbal agreement without any objection on the part of defendant, and that by this the right to invoke the statute was waived, and we are cited to the decision of the case of *Nunez v. Morgan*, 77 Cal., 427, in support of the argument. The opinion cited was rendered, so far as we can ascertain by its reading, in a case in which the defendant in pleading contented himself with the denial of the existence of the agreement and did not plead the statute of frauds, and did not object to the introduction of evidence of a parol agreement, and it was

held that he had waived the defense of the statute of frauds. In the case at bar the defendant had pleaded the statute as a defense, and evidence of a parol agreement that he had agreed to reconvey the property, introduced for the purpose of raising a trust and demanding its enforcement, was incompetent; and in our state the admission of incompetent evidence during the course of a trial before a judge without a jury is not ordinarily an error which can be relied upon, as it is the theory that the judge will not consider it in weighing the evidence and determining the cause, and the practice has arisen and prevails, for the purpose of expediting business and trials, of allowing evidence to be introduced to which, otherwise, objection would be interposed and urged. Where, in this state, a party has pleaded the statute of frauds as a defense to an action to have an alleged parol agreement to reconvey real estate to his grantor upheld, he will not be held to have waived the right to invoke the statute because of a failure to object, on the trial, to introduction of evidence of a parol agreement to the effect stated. In this state a defendant may avail himself of the defense that an agreement, such as was the one in the case at bar, is invalid under the statute of frauds under a general denial of the allegations of the petition. (*Powder River Live Stock Co. v. Lamb*, 38 Neb., 339.)

It is claimed that the nephew, in reconveying a part of the property to the plaintiff, purposely omitted to include the land in dispute herein. The testimony in the record before us relative to this point all tends to establish that the deed by which the reconveyance was effected was prepared by the request of the plaintiff and included such property as he described; that he furnished the description at a time when the nephew was not present, and that the plaintiff knew that the land in controversy was omitted from such instrument. In the opinion in the case of *Dailey v. Kinsler, supra,* where the question of the allowance of the establishment of a trust resting in a parol promise to reconvey real estate to a grantor was under

consideration, it was said—we quote it here with approval and as applicable herein: "This has been the rule in this state for nearly twenty years, and if changed it should be by statute. No doubt there are cases where the justice of the matter creates a strong desire to allow parol testimony to be given to establish the trust. The law, however, gives security to titles, prevents fraud and perjury in the assertion of alleged trusts, and conduces to the general welfare. It is not to be supposed that a party will make an absolute conveyance of real estate where he still retains an interest therein without that interest being stated in writing. The law, at least, requires it to be so stated, and it is the duty of the court so to declare." The judgment of the district court must be

AFFIRMED.