SAMUEL JOSIAH POLLARD V. MILLIE J. McKENNEY ET AL.*

FILED SEPTEMBER 17, 1903. No. 13,040.

1. **Trust.** An express trust in land does not arise and can not be created by parol; *aliter*, resulting and constructive trusts.

2. **Fraud.** Ordinarily, a false promise upon which fraud may be predicated must be of an existing fact or a fact alleged at the time to exist, and can not consist of a mere promise to be performed in the future; but if the intention not to perform the promise be shown to have existed at the time the promise was made, the promise is fraudulent.

3. ————. Where a wife prevails upon her husband, who is fatally ill, to convey certain of his property to her by promising to make a certain disposition thereof among his heirs at law, it will be presumed from her wilful failure to make such disposition that her promise was made without any intention of performing it, and was therefore fraudulent.

4. **Constructive Trust.** Where a person obtains the legal title to real estate belonging to another by means of fraud, actual or constructive, a court of equity will fasten a constructive trust upon the property, and convert the grantee or those claiming under him, by descent, into trustees of the legal title, and enforce the trust for the benefit of the grantor or those claiming under him.

* Rehearing allowed. See opinion, p. 753, *post*.

ERROR to the district court for Nemaha county: JOHN
S. STULL, DISTRICT JUDGE. *Reversed.*

*H. A. Lambert* and *J. S. McCarty*, for plaintiff in error.

*William H. Kelligar* and *Edgar Ferneau, contra.*

ALBERT, C.

This is a suit in which it is sought to have a trust de-
clared in favor of the plaintiff in certain real estate in
Nemaha county. The petition shows that Samuel Pollard
and Mary Jane Pollard were husband and wife; that the
former died in October, 1881; that the deceased for some
time before his death was the owner of the lands in suit,
which was the family homestead; that the plaintiff and the
defendants Millie J. McKenney and Mary E. Dearborn
are the only children of the deceased and his wife, and that
the defendant Lela L. McKenney is the daughter of Mil-
lie J. McKenney, and the defendant Mary G. Dearborn is
the daughter of the defendant Mary E. Dearborn. The fol-
lowing taken from the petition is necessary to an under-
standing of the case:

"That for a long time prior to his death the said Samuel
Pollard was an invalid, and in feeble health, afflicted with
progressive epileptic fits and paralysis, and knew that he
could not recover therefrom; that while thus afflicted, and
recognizing that he could not recover, and while of sound
mind and memory, he intended and purposed the follow-
ing disposition of his property, to wit: That his wife the
said Mary Jane Pollard, should have the use, rents and
profits of the above described lands for and during her
lifetime, subject to the payment of his debts, and that the
fee of said land should vest in the plaintiff, and that the
plaintiff upon the death of his mother, the said Mary Jane
Pollard, should pay to the defendants, his sisters, Mary
Eviline Dearborn and Millie Junietta McKenney (then
Millie Junietta Pollard), the sum of one thousand dollars
($1,000) each.

"That to carry out such intent and purposes, the said Samuel Pollard expressed his determination of having a will executed and drawn to that effect, but the said Mary Jane Pollard represented to him that such a disposition by will would entail large expense on the estate by way of court fees and in probating and administration, and suggested and advised that he make such disposition by deed, to which the said Samuel Pollard assented, and thereafter caused a deed to be drawn conveying said real estate to the plaintiff herein in fee simple, subject to the life estate of the said Mary Jane Pollard, and the payment by this plaintiff to his said sisters, defendants herein, of the sum of one thousand ($1,000) dollars each, at the time of the death of the said Mary Jane Pollard, charging the said Mary Jane Pollard with the payment of all the debts of the said Samuel Pollard. That the said Mary Jane Pollard delayed the execution of the deed, and during said time the said Samuel Pollard constantly grew worse and more enfeebled and unable to leave his bed, and said disease affected his mind and weakened his will power. That at this time the said Samuel Pollard was indebted to various persons in and about the sum of $500, and was negotiating with William Tynon for a loan on said real estate for said amount, with which to pay said indebtedness. That the creditors of the said Samuel Pollard were insisting on the payment of the various claims, greatly worrying the said Samuel Pollard in his then enfeebled condition, and causing him to be very desirous of making said loan.

"That to prevent the said Samuel Pollard from executing the said deed, the said Mary Jane Pollard represented to him that the execution of said deed would prevent the making of said loan, and requested him to convey the land to her, and that she would make said loan and obtain said money and pay said debts, and for him to rely upon her; that she would carry out his intentions as to the disposition of said lands as hereinbefore set forth, and that she would in all things carry out his desires in regard to said land,

and would hold the same during her life, and would, before
death, convey the fee simple title thereof to this plaintiff;
that by said representations she prevented the said Samuel
Pollard from executing said deed conveying said land to
this plaintiff, or by other deed or will conveying it to this
plaintiff, and induced him to rely upon her to carry out
his intentions in regard to the disposition of said land as
above set forth.

"That while the said Samuel Pollard was in a very weak
physical and mental condition, the said Mary Jane Pol-
lard had prepared certain deeds conveying said real estate
in fee to her, and the said Samuel Pollard, through said
representations and statements made to him by the said
Mary Jane Pollard, relied upon her to carry out his above
set forth desires and intentions as to the disposition of said
real estate above described, and did by said deed of con-
veyance, using this plaintiff as a conduit, convey said real
estate to said Mary Jane Pollard.

"That this plaintiff, relying upon the statements and
representations of said Mary Jane Pollard, and having con-
fidence in her, and believing that she would carry out the
intentions of said Samuel Pollard, consented to act as a
conduit for the conveyance of said land from the said
Samuel Pollard to the said Mary Jane Pollard. That said
deeds were duly executed and recorded. That said land at
said time was of the value of $4,000. That the $500 men-
tioned in said deeds was only a pretended consideration,
and was never intended to be paid, and no part thereof was
ever paid, and that the only consideration for said deeds
was the argreement herein set forth.

"That on June 26, 1901, the said Mary Jane Pollard
died; that from the time of the death of the said Samuel
Pollard to her death, the said Mary Jane Pollard held a
life estate in said land, and during all of said time received
the rents and profits of said land, and during all of the
said time held the fee in said land in trust for this plain-
tiff under and by virtue of said agreement with said
Samuel Pollard. That during all of this time this plain-

tiff believed and relied upon the said Mary Jane Pollard fulfilling and carrying out said agreement.

"That since the death of said Mary Jane Pollard, the defendant, Millie Junietta McKenney, has presented and offered for probate a pretended will of the said Mary Jane Pollard, and the same is now pending in the county court of Nemaha county, Nebraska, which said will purports to convey said above described real estate to the above mentioned defendants. A copy of the said pretended will is hereto attached, marked 'Exhibit A,' and made a part of this petition. That during the lifetime of the said Mary Jane Pollard she failed and neglected to carry out the intentions of the said Samuel Pollard as to conveying said real estate to this plaintiff, and failed and neglected to carry out said agreement as above set forth, and never aliened or conveyed said real estate, other than the conveyance thereof purported to have been made in said pretended will, and by the said will the said Mary Jane Pollard attempted to violate said trust and to convey said real estate to said defendants, and to deprive this plaintiff of any title thereto or estate therein.

"That at all times since the death of his father, this plaintiff was and now is the equitable owner and entitled to the fee in and to all of said real estate; that said Mary Jane Pollard only had a life estate in and to said land, and held the legal title in trust for this plaintiff, and that whatever title in and to said land that is now held by said defendants, any and all of them, either under said pretended will or as heirs of said Mary Jane Pollard, is held in trust for this plaintiff, who is now the real and equitable owner of said land, and that said Mary Jane Pollard during her life frequently admitted said trust, and this plaintiff had full faith and unbounded confidence in the said Mary Jane Pollard and fully believed she would faithfully execute said trust.

"That said defendants, either or all of them, have no right, title or interest in or to said real estate or any part thereof, other than a charge thereon of $1,000, payable to

each, said Millie Junietta McKinney and Mary Eviline Dearborn, which said sums this plaintiff is now ready, able and willing to pay according to the intentions of the said Samuel Pollard, and is now ready and in all things willing to carry out his part in fulfilling such intentions."

The prayer is, that the plaintiff be declared the equitable owner of the land, that the purposes and intentions of Samuel Pollard in the premises be carried into effect, and for general relief.

The defendants filed general demurrers, which were sustained by the court; the plaintiff elected to stand on his petition and a decree was entered accordingly. The case is here on error.

The argument in this case proceeds on the assumption that the agreement of the wife, Mary Jane Pollard, to carry out the intention of her husband in regard to the land, rested in parol. As this assumption is not inconsistent with the allegations of the petition, we proceed on the theory that such was the character of the agreement. The only question, then, in this case is, whether the trust sought to be enforced falls within the provisions of chapter 32, commonly called the statute of frauds, which, so far as concerns us now, is as follows:

"Section 3. No estate or interest in land, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same.

"Section 4. The preceding section shall not be construed to affect in any manner the power of a testator in the disposition of his real estate by a last will and testament, nor to prevent any trust from arising or being extinguished by implication or operation of law."

The language of section 3 is so clear and sweeping as to exclude the possibility of creating an express trust by

parol. That section is not only an insuperable obstacle to the creation of a trust of that character by parol, but to thus creating a trust in any manner relating to land. In *Hansen v. Berthelsen,* 19 Neb. 433, it was held that an express trust can not be raised by a parol promise to reconvey to the grantor. To the same effect are the following: *O'Brien v. Gaslin,* 20 Neb. 347; *Dailey v. Kinsler,* 31 Neb. 340, 35 Neb. 835; *Thomas v. Churchill,* 48 Neb. 266; *Cameron v. Nelson,* 57 Neb. 381. The principle applied in those cases applies with equal force to a parol promise to convey to a third party, because it would be an attempt to create an express trust by parol and would contravene the provisions of section 3, *supra.* Such is the holding of the courts of other states, under statutory provisions similar to those quoted. Among the cases adhering to such rule are the following: *Shafter v. Huntington,* 53 Mich. 310; *Randall v. Constans,* 33 Minn. 531; *Fairchild v. Rasdall,* 9 Wis. 379; *Pavey v. American Ins. Co.,* 56 Wis. 221. From what has been said it necessarily follows, we think, that no express trust was raised by the parol promise of the wife to carry out the alleged intention of her husband as to the property in question.

But, by the express provisions of the fourth section, trusts arising by implication, or by operation of law, are excepted from the operation of the statute. Both resulting and constructive trusts obviously fall within the exception. Resulting trusts are such as are presumed or implied from the acts of the parties, as where one man pays the purchase price for land and the deed is taken in the name of another, it is presumed that a trust was intended for the person who paid the money. Such trusts arise, result or are implied from the contract and relations of the parties; the intention of the parties, as manifested in their contracts made in good faith, is the foundation of them. 1 Perry, Trusts (5th ed.), sec. 166. But, the presumption arising from such contract and relations is not conclusive, but may be rebutted by evidence showing a different intention. And where, as in the present

case, the intention of the parties is clearly expressed, there is no room for presumption or implication, consequently there can be no resulting trust.

Closely allied to resulting trusts, and frequently confused with them, are constructive trusts. This class of trusts arises from actual or constructive fraud or imposition, committed by one party on another. 1 Perry, Trusts (5th ed.), sec. 166. Thus if one person procures the legal title to property from another by fraud or misrepresentation, or by an abuse of some influential or confidential relation which he holds toward the owner of the legal title, obtains such title from him upon more advantageous terms than he could otherwise have obtained it, the law constructs a trust in favor of the party upon whom the fraud or imposition has been practiced. Again, if a party obtains the legal title to property by virtue of a confidential relation, under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, hold and enjoy the benefits; out of such circumstances or relations, a court of equity will raise a trust by construction and fasten it upon the conscience of the offending party and convert him into a trustee of the legal title. *Thompson v. Thompson,* 16 Wis. 94; *McClain v. Johnson,* 43 Vt. 48; *Hollinshead v. Simms,* 51 Cal. 158.

There is little difficulty in applying the doctrine of constructive trusts in cases of actual fraud, but it is not always easy to determine whether a given transaction involves constructive fraud. The general doctrine of the courts is, that a false representation, upon which fraud may be predicated, must be of an existing fact, or a fact alleged to exist at the time, and can not consist of a mere promise to be performed in the future. *Jackson v. Cleveland,* 15 Mich. 94; *President and Trustees of Hartsville University v. Hamilton,* 34 Ind. 506; *Noble v. State,* 39 Ind. 352; *State v. Prather,* 44 Ind. 287; *Adkins v. Adkins,* 48 Ind. 12; *Hayes v. Burkam,* 51 Ind. 130; *Reagan v. Hadley,* 57 Ind. 509; *Welshbillig v. Dienhart,* 65 Ind. 94; *Burt*

*v. Bowles,* 69 Ind. 1; *Bethell v. Bethell,* 92 Ind. 318; *Gallager v. Brunel,* 6 Cow. (N. Y.) 347; *Johnston v. La Motte,* 6 Rich. Eq. `(S. Car.) 347. But, if the intention not to perform the promise be shown to have existed at the time the promise was made, the promise is fraudulent, even in the absence of confidential relations between the parties. *Christy v. Sill,* 95 Pa. St. 387; *Brison v. Brison,* 75 Cal. 525; *Larmon v. Knight,* 140 Ill. 232. In the last case the court hold that the existence of the evil intent at the time the promise was made may be inferred from the failure to comply with the promise, and that the promisor may be presumed to have intended, when he made the promise, to do what he finally did do. In *Newton v. Taylor,* 32 Ohio St. 399, it was held, that where a party participates in bringing about the arrangement, induces the result and takes in confidence what he can not retain without bad faith, he becomes a trustee by virtue of his own wrongful acts, and the trust in such case may be proved by parol. In *Brison v. Brison, supra,* the court held, not only that a promise made with the intention of not performing it is fraudulent, but that the violation by the grantee of a promise to reconvey, is constructively fraudulent and gives rise to a constructive trust, which may be established by parol, if he obtains an absolute deed without consideration, by means of a parol agreement to reconvey to the grantor to whom he stands in the confidential relation, *even where there be no intention at the time not to perform the promise.* In that case, as in this, the parties were husband and wife and considerable stress is laid on the confidential relation of the parties. In holding that the absence of an intention not to perform the promise when it was made is immaterial, the court went farther than was necessary to a decision, because the petition, as construed by the court, shows that the promise was made without any intention of performing it. But, in our opinion, the rule is nevertheless sound. A transaction of that character involves more than a mere breach of contract; there is also involved the

element of confidence reposed by the grantor in one upon whom he had a right to rely, and a betrayal of such confidence.

In the present case the parties, as before stated, were husband and wife. The conveyance was made at the solicitation and instigation of the latter, during the last illness of her husband, when he was both physically and mentally weak, and under circumstances well calculated to strengthen the influence of his wife over his conduct. By virtue of her relationship and consequent influence, and, upon the strength of her promise to carry out his intentions with respect to the property, the wife obtained the legal title. Such agreement she not only failed to perform, but repudiated by making an entirely different disposition of the land.

The rules, so far as we have stated them, announced in *Brison v. Brison, Larmon v. Knight* and *Newton v. Taylor, supra,* meet our entire approval, and, it seems to us, that any one or more of them applied to the facts in this case will necessarily impress a trust upon the property in suit. It follows, therefore, that the demurrer should have been overruled.

What has been said disposes of the question presented by the record, but, as the case goes back for trial, it may be proper to anticipate one of the questions which will confront the trial court. It appears to be assumed by the plaintiff that the relief in this case should be a decree giving effect to the intention of the parties as shown by their agreement at the time of the conveyance, and to the testamentary intentions of the grantor. We are aware of authorities which seem to support that assumption, but we do not think they should control in view of the sections of the statute of frauds, *supra.* Section 3 explicitly provides that no trust over or concerning land, or in any manner relating thereto, may be created by parol. It does not contemplate the existence of a right without a remedy but excludes the idea of the existence of the right unless created in the prescribed manner. To carry out the in-

tention of the parties in this case would be to give effect to a contract which the statute, in express terms, declares shall be ineffective. Besides, it would be giving effect to the mere testamentary intentions of the grantor, whereas such intentions, except in the case of nuncupative wills, to be effective must be expressed in the form of a will, duly executed. Compiled Statutes, chapter 23, section 27 (Annotated Statutes, 4992). Moreover, as we have seen, the trust arises from the actual or constructive fraud of the grantee. The action then is for relief on the ground of fraud, and to compel the grantee, or those claiming under him, to surrender that which in equity and good conscience they are not permitted to retain. It might have been maintained by the grantor in his lifetime upon a showing bringing the case within the rules hereinbefore stated and approved. Had it been brought by him, the relief granted would have been merely to place the parties *in statu quo.* Those claiming under him, it seems to us, are entitled to the same relief and no other or greater. The court may well deprive the defendants of the fruits of a fraudulent transaction, and still give force and effect to the statute of frauds. But if it goes farther and carries out the intentions of the parties as evidenced by their agreement and the testamentary intentions of the grantor orally expressed, the statute of frauds and of wills become dead letters, because to carry out the intention of the parties to a contract is to enforce it, and to carry out testamentary intentions is to give effect to a will. That, in case the contract or will is not in writing, would be to do the very thing the statute says may not be done. If we are right thus far, it follows that the relief in this case should be limited to a cancelation of the conveyances whereby the wife acquired her husband's title to the land.

It is therefore recommended that the decree of the district court be reversed, and the cause remanded for further proceedings according to law.

GLANVILLE and BARNES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is reversed, and the cause remanded for further proceedings according to law.

REVERSED.

The following opinion on rehearing was filed October 20, 1904. *Judgment of reversal adhered to:*

Trust: DECREE. A decree establishing a constructive trust should not be limited to a cancelation of the conveyance whereby the constructive trustee acquired title to the land; the trust should be ascertained and enforced.

SEDGWICK, J.

It appearing on the motion for rehearing that the commissioner in his opinion had announced a rule for the guidance of the lower court which is not indicated in the syllabus, a reargument was had before the commission, one of the present members of the court having been upon the commission and heard the reargument. We are satisfied with the result on the former hearing reversing the decision of the lower court upon the principles stated in the syllabus. The statement, however, in the opinion that "the relief in this case should be limited to a cancelation of the conveyance whereby the wife acquired her husband's title to the land," we think is erroneous. If the allegations of the petition are true, the decedent, Samuel Pollard, intended and proposed to convey the land in question to the plaintiff subject to the life estate of the defendant, Mary Jane Pollard, and also subject to the payment of the debts of the decedent. The allegations of the petition are sufficient to show a constructive trust in favor of the plaintiff, and, if upon the trial these allegations are sustained by the evidence, the trust should be ascertained and enforced.

The cause is therefore remanded for further proceedings in accordance with the opinion as herein modified.

REVERSED.