NAOMI E. JENKINS ET AL., APPELLEES, v. JAY O. JENKINS ET AL., APPELLANTS.
36 N. W. 2d 637

Filed April 7, 1949.  Nos. 32494, 32495.

*Beatty, Clarke & Murphy* and *Earl E. Morgan,* for appellants.

*C. L. Baskins* and *E. H. Evans,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This appeal involves two actions in equity, one for the partition of certain real estate, the other to quiet title to an undivided two-fifths interest therein of Pearl E. Crable, deceased.

It appears from the record that from and after 1902, until 1941, William H. Jenkins was the owner of the northwest quarter and the southwest quarter of Section 19, Township 14 North, Range 32 West, sixth principal meridian, situated in Lincoln County, Nebraska, except a strip of land conveyed to the state for road purposes and a strip of land conveyed to a drainage district and occupied by it for right-of-way across said lands, subject to two mortgages in the amount of $16,000. William H. Jenkins departed this life in 1941. By his will he devised this land to his children, Elmer R. Jenkins, Lizzie LaFevers who predeceased him her share going to Dorthey Leatherwood her daughter and sole surviving heir at law, Pearl E. Crable, Harry E. Jenkins an adjudged incompetent, and Jay O. Jenkins, each an undivided one-fifth interest, and to his daughter Laura E. Bales he devised the residue of his estate consisting of real estate and personal property. The mortgage indebtedness was compromised with the approval of the

district court by the administrator with the will annexed, giving a mortgage to one A. E. Holtgren in the amount of $12,000. After the distribution of the estate of William H. Jenkins, Dorthey Leatherwood and her husband conveyed her one-fifth interest in this land to Jay O. Jenkins and Pearl E. Crable for $2,500, and on the same day Jay O. Jenkins, his wife, and Pearl E. Crable, gave to Dorthey Leatherwood a mortgage for $1,850 as part of the purchase price of her interest in the land, subject to a $12,000 mortgage to A. E. Holtgren. The deed was subject to the same mortgage.

On August 10, 1944, Elmer R. Jenkins commenced a suit for partition of this land, alleging that he and Harry E. Jenkins each owned an undivided one-fifth interest therein and that Jay O. Jenkins and Pearl E. Crable each owned an undivided three-tenths interest therein, the entire estate being subject to the Holtgren mortgage of $12,000, and the one-fifth interest acquired by Jay O. Jenkins and Pearl E. Crable from Dorthey Leatherwood being subject to a $1,850 mortgage.

At the refere's sale held November 1, 1944, Jay O. Jenkins bid $34,000 which included the mortgage indebtedness to Holtgren upon which there was due approximately $10,000. This bid was subject to drainage district assessments in the amount of $2,695 exclusive of the mortgage. The sale was confirmed on February 5, 1945. After deducting the mortgage indebtedness and the expenses of the proceedings there was a net sum of $23,469.84 for distribution among the owners of the land: To Harry E. Jenkins and Elmer R. Jenkins each the sum of $4,693.94, and to Jay O. Jenkins and Pearl E. Crable each the sum of $7,040.95 subject to the mortgage interest of Dorthey Leatherwood in the sum of $450 which sum was to be deducted equally and proportionately from the shares otherwise due Jay O. Jenkins and Pearl E. Crable. The referee filed receipts showing distribution of the proceeds of the sale, including the release of the Dorthey Leatherwood mortgage.

The Holtgren mortgage was released on February 9, 1945, and on the same day Jay O. Jenkins and wife, and Pearl E. Crable gave a mortgage to Holtgren on this land for $18,400 to secure their notes for that sum. Ten thousand dollars of this sum represented the balance due Holtgren on the prior mortgage and $8,400 was paid to the referee upon the bid of Jay O. Jenkins to satisfy it.

On February 9, 1945, the referee's deed was executed in favor of Jay O. Jenkins and was recorded March 19, 1945. On the same day Jay O. Jenkins and wife executed a deed to an undivided two-fifths interest in the land to Pearl E. Crable, "subject to first mortgage to A. E. Holtgren for $18,400.00 which both parties have executed upon the entire premises and of which said mortgage grantee assumes and agrees to pay two-fifths thereof as between the parties hereto." The deed recites a consideration of "one dollar and assumption of indebtedness."

Before confirmation of the sale Elmer R. Jenkins was dissatisfied with the amount to be paid by Jay O. Jenkins and threatened to file objections to confirmation of the sale. By agreement between Jay O. Jenkins and Elmer R. Jenkins, the latter was to receive $5,000 for his one-fifth interest in consideration of permitting the sale to be confirmed without objections on his part so, on November 25, 1944, when this agreement was made, Jay O. Jenkins gave his check for $1,500 to Elmer R. Jenkins to apply on the agreement. On December 6, 1944, Elmer R. Jenkins and wife executed a warranty deed to Elmer R. Jenkins' one-fifth interest to Jay O. Jenkins.

Pearl E. Crable died March 10, 1946, intestate. Her estate was administered in the county court of Lincoln County. She left as her sole and only heirs at law Elmer R. Jenkins, Harry E. Jenkins, Jay O. Jenkins, Laura E. Bales, and Dorthey Leatherwood, niece, and whatever estate she owned at the time of her death descended to her said heirs each an undivided one-fifth interest. At the time of her death Pearl E. Crable was the guardian of Harry E. Jenkins, incompetent. The

inventory filed by the administrator for Pearl E. Crable's estate listed an undivided two-fifths interest in the land heretofore described.

After the administration of his father's estate, Jay O. Jenkins managed the farm, collected the rents, and paid the expenses, certain amounts on the principal, and interest on the mortgage. On March 15, 1943, Pearl E. Crable gave a power of attorney to Jay O. Jenkins with respect to the management of her interest in the land left to her by her father. Another agreement appears in the record under date of December 23, 1941, between the parties and the mortgagee A. E. Holtgren, appointing him to manage and operate the land during the term of the mortgage and until the same was fully discharged.

The defendant Jay O. Jenkins, in his answer and cross-petition in the two actions, alleges that he is the sole fee simple title owner of all the real estate described in the plaintiffs' petition, and that none of the parties have any interest or acquired any title thereto, and prayed title be quieted in him.

In the partition action the defendant Jay O. Jenkins, in his cross-petition, alleged an oral agreement made between himself and Pearl E. Crable to the effect that he should have the absolute fee simple title in the land, and in consideration of the same he was to assist Pearl E. Crable during her lifetime with reference to taking care of her and managing her financial affairs for the reason that she was in poor health; and, further, the agreement provided that upon his death his wife would have the life estate, and upon her death the land would go to Pearl E. Crable. Pursuant to and in the performance of the understanding of such agreement, the deed to Pearl E. Crable was never delivered to her nor recorded, but left within the exclusive possession of Jay O. Jenkins.

The defendant Jay O. Jenkins further alleged that he had never been repaid by Pearl E. Crable for any part of the interest purchased by him from Dorthey Leather-

wood, nor any part of other moneys expended by him for said real estate. The prayer was to quiet title to the real estate in Jay O. Jenkins, and that all the other parties to the action be adjudged to have no title or interest therein.

The record discloses that the deed from Jay O. Jenkins and his wife to Pearl E. Crable conveyed an undivided two-fifths interest in the land in question, subject to the first mortgage of A. E. Holtgren for $18,400, was signed and acknowledged in the presence of a notary by the grantors and was transmitted by letter dated February 13, 1945, to Pearl E. Crable by counsel who prepared the deed. The note and mortgage to A. E. Holtgren and the deed to Pearl E. Crable were executed about the same time.

Jay O. Jenkins testified that Pearl E. Crable gave her personal check dated February 10, 1945, to Elmer R. Jenkins for $306.03 to pay up the balance of the partition proceedings. One-half of the balance of Dorthey Leatherwood's mortgage of $450 was deducted from Pearl E. Crable's share of the amount due her on the partition sale, and the remaining amount to Pearl E. Crable of $6,815.95 was left as part of the purchase price of the land bid in by Jay O. Jenkins. Pearl E. Crable assumed two-fifths of the Holtgren mortgage. One-half of the balance of the Dorthey Leatherwood's mortgage of $450 was deducted from Jay O. Jenkins' share of the amount due him in the partition action. The balance of $6,815.95, constituting his share in the sale of the land, was left in the land to enable him to bid it in. He assumed three-fifths of the Holtgren mortgage. He gave a check signed by himself to the referee in the partition sale dated February 9, 1945, in the amount of $450, evidencing the balance due on Dorthey Leatherwood's mortgage. At the same time he gave a check signed by himself to A. E. Holtgren in the amount of $18.10, the difference on the principal of the mortgage to enable the new mortgage to be made in round figures.

There are 20 checks signed by Jay O. Jenkins in the record dating from September 8, 1942, through December 20, 1944, evidencing payments made to Dorthey Leatherwood for her interest in the land, totaling $2,055.38.

On May 15, 1943, the date the transaction was had with Dorthey Leatherwood, Pearl E. Crable gave to Jay O. Jenkins a check for $200 which stated on its face: "Payment Dorthey's share of farm." Jay O. Jenkins testified that he borrowed this amount from Pearl E. Crable for the reason that he was running short on some supply house bills, and that he paid her back in cash from time to time. There is nothing in the record to disclose what part, if any, of this amount he paid back.

It clearly appears from what has been heretofore set forth that Pearl E. Crable purchased a two-fifths interest in the land in controversy and of which she died seised.

Jay O. Jenkins testified in addition that he and Pearl E. Crable decided they wanted to keep the land if they could, and that he would like to have the farm; that the two of them did take it over; and that they so informed Mr. Evans, the counsel who handled the litigation, with reference to their agreement and how they proposed to handle the same. After the deed to Pearl E. Crable and the mortgage to Holtgren were made, the deed was left in Evans' office and thereafter Pearl E. Crable brought it to Jay O. Jenkins' office and handed it to him. She never asked for it thereafter, and he had possession of it at all times. He further testified that Pearl E. Crable's health was not good and that he and his wife looked after her whenever they knew there was anything wrong with her, because she had said that if anything happened to her it was up to them to look after her. He testified that Pearl E. Crable told a Mr. VanCleave, in his presence, that she knew if she became ill it would be up to Jay and his wife to look after her. He further testified: "She said that if anything happened to her, her interest

was to come to me; and if anything happened to myself, my wife would be taken care of and my interest was to go to her." She tried to see attorney Evans on several occasions but was not able to contact him. Pearl and her sister Mrs. Laura E. Bales did not get along very well due to a claim that Pearl had filed against their father's estate for caring for him when Mrs. Bales had moved out of the state. He further testified that Pearl did not discuss her personal financial matters with him, but did discuss matters relating to the farm, and when she sold her house she sought his advice. He further testified that he discussed the matter with Pearl about the property going to him, his wife, or Pearl by right of survivorship, in Mr. Evans' office, and after that time; that Mr. Evans was in and out of the room, but before they got through they told him about the whole transaction, what their agreement was and their plans to have survivorship deeds made. They never got around to making survivorship deeds.

Ella Holtgren testified that she knew the Jenkins family; that in a conversation when Pearl E. Crable was talking about the farm and the rents she said that neither she nor Jay O. Jenkins had ever obtained any profit from it so far, but they hoped they would; that she was having a survivorship deed made; and that she and Jay had agreed to have survivorship deeds made providing in case she should pass away first her part was to go to Jay and his wife, and they in turn were having a survivorship deed made which would go to her in case they passed away first.

The witness VanCleave who had been acquainted with Pearl E. Crable for ten years testified that he had conversations with her wherein she told him that she and Jay were planning to buy the farm between them and go fifty-fifty; that if anything should happen to her it would go to Jay, and if anything happened to Jay it was supposed to come to her; that she was going to have Evans prepare the papers in accordance with the

agreement; that Jay was managing the farm in good shape; that she was ill at the time; and that this and other conversations of like nature occurred several times.

George L. Jorgensen testified that after the partition sale Pearl E. Crable came out to the farm, he being a tenant thereon, and stated that she was satisfied with the manner in which Jay O. Jenkins was handling things; that they were going to have survivorship deeds made so if anything happened to her the farm would go to Jay O. Jenkins, and if anything happened to him it would go to her.

To like effect was the testimony of Jennie Wooley, a friend of Pearl E. Crable's. This witness testified that when Pearl got the deed for her two-fifths interest she was going to leave it with Jay O. Jenkins and not have it recorded; that about a week prior to the time she died she told this witness that she had not had the papers made out but she still wanted Jay and his wife to have everything that she had; and that she was feeling badly at the time. She further testified that Jay O. Jenkins and his wife helped Pearl Crable when she was ill, and this witness, with Jay's wife took care of her and carried things for her to eat; and that Jay's wife did her laundry, which she had been doing for several years. Pearl told this witness that if she should get sick and not be able to work it would fall upon Jay and his wife to take care of her. Pearl E. Crable also told this witness about the trouble with her sister, Mrs. Bales, and that the agreement between Jay O. Jenkins and herself was for survivorship deeds to be made.

The witness Clinton Cox testified to substantially the same set of facts as other witnesses regarding the disposition of the land owned by Pearl E. Crable, also that he had seen a memorandum which she had intended to give to the attorney preparing her will wherein she wanted Jay O. Jenkins to have the land and his wife to have her car.

A cousin of the Jenkins children testified to having

met Pearl E. Crable in a market where she told this witness that she had been unable to contact her attorney to have papers made up providing for a survivorship deed between Jay O. Jenkins and herself in accordance with their agreement, and that she was going to do this right away on account of the doctor's advice that she was ill.

On rebuttal Emit Bales, a brother-in-law of Pearl E. Crable, testified that he was in Evans' office after Pearl E. Crable's funeral with Jay and Elmer Jenkins, Mrs. Bales, and Elmer's wife, and heard a conversation between Evans and Jay O. Jenkins relative to whether there was a will, and whether there was a deed showing the ownership that Pearl E. Crable had in the farm, and Jay told them that he did not know anything about a deed to Pearl.

Attorney E. H. Evans testified that he handled the William Jenkins estate, the partition proceedings, the estate of Pearl E. Crable, the guardianship of Harry E. Jenkins, and represented William H. Jenkins during his lifetime. He further testified with reference to certain proceedings had in connection with the land between the parties; that he made the settlement in the partition proceedings, and the referee's deed was delivered to Jay O. Jenkins closing that matter. He drew a deed from Jay O. Jenkins and his wife to Pearl E. Crable under their instructions. He understood, according to the agreement between Jay O. Jenkins and Pearl E. Crable, that they were going to hold the land bid in in partition in equal shares, but Pearl E. Crable was unable to handle her half of it so it developed that Jay O. Jenkins would retain three-fifths of the land and Pearl E. Crable two-fifths. He saw Pearl E. Crable several times in the county judge's office after the deed transaction, when she was guardian of her brother Harry's estate. She did not qualify as guardian until after the partition sale, then she was in his office on two or three occasions in the evening, relative to guardianship matters. He never

heard anything about a survivorship deed as between Jay O. Jenkins and Pearl E. Crable. He handled Pearl E. Crable's estate. He withdrew from the cases involved here at the time of trial, to participate as a witness. He further testified that Jay O. Jenkins came to his office after Pearl E. Crable's death and asked if she had made a will, and said that the deed to Pearl was not on record and the title was entirely in his name, which indicated that Pearl intended he should have her interest in the land. Mr. Evans showed the heirs the copy of the letter of transmittal of the deed to Pearl E. Crable. At that time Jay O. Jenkins did not say anything about whether or not he knew about the deed. Jay told him about the arrangements between himself and Pearl substantially as has been heretofore set out. He further testified that he heard of no such arrangement until after Pearl E. Crable's death.

The trial court found generally in favor of the plaintiffs and against the defendants upon the plaintiffs' petition, and generally against the defendants and in favor of the plaintiffs upon the defendants' answer and cross-petition; that Pearl E. Crable died intestate the owner of an undivided two-fifths interest in the land and left as her heirs her remaining brothers and sisters and one niece; that there never was an oral agreement between Pearl E. Crable and Jay O. Jenkins and his wife whereby Pearl E. Crable was to make a survivorship deed to Jay O. Jenkins and his wife; that if any such matter was agreed upon after the execution and delivery of the deed it was void under the statute of frauds and there was no part performance to take it out of the statute of frauds, and to enforce such contract would enrich Jay O. Jenkins at the expense of the other heirs; and that the title to the said lands should be quieted in the following proportions: Jay O. Jenkins, seventeen twenty-fifths; Dorthey M. Leatherwood, two twenty-fifths; Naomi E. Jenkins, the widow of Elmer R. Jenkins, two twenty-fifths; Harry E. Jenkins, two twenty-fifths; and Laura E. Bales, two

twenty-fifths. The cross-petition of Jay O. Jenkins was dismissed and title quieted in accordance with the findings.

Upon the overruling of the motion for new trial, the defendants appeal.

The appellants contend that the trial court committed prejudicial error in admitting the testimony of attorney Evans.

We have previously summarized the matters between the parties to this appeal handled by this attorney. The appellants objected to the testimony of this witness on the ground that it called for a privileged communication which was not waived in writing or in open court; and further, that such testimony was incompetent because the relation of attorney and client existed as between this witness and Pearl E. Crable.

Appellants rely on section 25-1201, R. S. 1943, as follows: "The following persons shall be incompetent to testify: * * * (3) an attorney concerning any communication made to him by his client in that relation or his advice thereon, without the client's consent in open court or in writing produced in court; * * *."

Appellants also rely on section 25-1206, R. S. 1943, which provides in part: "No practicing attorney, counselor, * * * shall be allowed in giving testimony to disclose any confidential communication, properly entrusted to him in his professional capacity, and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice or discipline."

"When two or more persons employ or consult the same attorney in the same matter, communications made by them in relation thereto are not privileged inter sese. By selecting the same attorney, each party waives his right to place those communications under the shield of professional confidence. Either party may introduce testimony concerning the same as against the other, or his heirs or representatives. The reason assigned for

the rule is that, as between the clients, communications made for the mutual benefit of all lack the element of confidentiality which is the basis of privileged communications. Ordinarily, the attorney for both parties is not the depositary of confidential communications from either party which ought to be withheld from the other. And this is usually the case even though the parties have adverse interests." 58 Am. Jur., Witnesses, § 496, p. 277. See, also, annotation in 141 A. L. R. 554, 555.

It is sufficient to state that the testimony of an attorney as to a transaction in which two or more parties consult him, for their mutual benefit, is not privileged in an action between such parties or their representatives, involving such transaction. Communications made in the presence of others do not constitute a privileged communication. A confidential communication must necessarily be a secret one, and secrecy is enjoined, either actually or by implication. Such a communication is inherently private, and it is not intended or contemplated that it shall become known by others. See Crawford v. Raible, 206 Iowa 732, 221 N. W. 474.

Where two or more persons employ the same attorney in the same business, their communications with the attorney in relation to the business are not privileged between themselves, even though their interests may be diverse, where the disclosures are made in the presence and hearing of all parties concerned, or are intended for the information of all parties. See, Lewis v. Beh, 206 Iowa 281, 218 N. W. 944; Wallace v. Wallace, 216 N. Y. 28, 109 N. E. 872; Wahl v. Cunningham, 320 Mo. 57, 6 S. W. 2d 576, 67 A. L. R. 489, 504.

In the light of the record and the foregoing authorities, we conclude that the testimony of the attorney was not a privileged communication as contemplated by the sections of the statutes cited by the appellants.

The appellants contend the evidence is sufficient to establish a constructive trust.

"A constructive trust is a relationship with respect to

property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." O'Shea v. O'Shea, 143 Neb. 843, 11 N. W. 2d 540. See, also, Wilcox v. Wilcox, 138 Neb. 510, 293 N. W. 378; Box v. Box, 146 Neb. 826, 21 N. W. 2d 868; Pollard v. McKenney, 69 Neb. 742, 96 N. W. 679, 101 N. W. 9; 1 Restatement, Trusts, p. 5, § 1e.

The law is well established that each case is to be determined from the facts, circumstances, and conditions as presented therein. See, Damkroeger v. James, 95 Neb. 784, 146 N. W. 936; Lennox v. Anderson, 140 Neb. 748, 1 N. W. 2d 912; Lunkwitz v. Guffey, 150 Neb. 247, 34 N. W. 2d 256.

Sections 36-103 and 36-104, R. S. 1943, constitute a part of the statute of frauds. The former section recognizes the creation of an interest in land "by operation of law." The latter section provides that section 36-103 shall not be construed in any manner to prevent any trust from arising by implication or operation of law. Thus, trusts arising by implication or operation of law are excepted from the operation of the statute of frauds. See, O'Shea v. O'Shea, *supra;* Pollard v. McKenney, *supra.*

The appellants contend that from an analysis of the evidence, when the father of Pearl E. Crable and Jay O. Jenkins died, the highest of confidential and even fiduciary relations existed between this brother and sister, they were tenants in common of the estate devised by their father and partners therein, and Jay was Pearl's agent with respect to the management of the farm; that Jay O. Jenkins was the sole fee simple title owner of the land and transferred by deed the undivided interest of Pearl upon her oral agreement to convey or to give to him the right of survivorship in the land conveyed in the event of her death before his.

Pearl E. Crable, the transferee, failed to perform the agreement but held the interest upon a constructive trust for Jay because she was, at the time of the transfer, in a confidential relation to him. She died intestate without having repudiated her promise but intending always to perform it; that it is unreasonable to believe, having a dislike for one of her sisters, that she would want this sister to participate in a distribution of her estate; and that in consideration of the mutual promises between this brother and sister as to the disposition of the land, the heirs of Pearl E. Crable are obligated to carry out the constructive trust.

The appellants further contend that the oral agreement as between Jay O. Jenkins and Pearl E. Crable was in part performed by Jay's management of the farm, the collection of the rents and the application of the same to taxes, expenses and mortgage indebtedness as agreed in the oral contract, and was directly referable to the contract sought to be enforced; and, also, that on occasions during her illness Jay and his wife took care of Pearl, and Jay's wife did her laundry.

The burden is on the party claiming the estate of a person deceased under an alleged oral contract, to prove an oral contract the terms of which are clear, satisfactory, and unequivocal, and that his acts constituting performance were such as were referable solely to the contract sought to be enforced, and not such as might have been referable to some other or different contract. See, Lunkwitz v. Guffey, *supra;* Overlander v. Ware, 102 Neb. 216, 166 N. W. 611; Riley v. Riley, 150 Neb. 176, 33 N. W. 2d 525; Caspers v. Frerichs, 146 Neb. 740, 21 N. W. 2d 513.

In view of the foregoing authorities we conclude that the appellants have failed to prove this oral contract by clear, satisfactory, and convincing evidence, and failed to prove such part performance as would take the case out of the statute of frauds. There is nothing in the evidence to indicate that the deed was not to be de-

livered to Pearl E. Crable. There is an indication by Jay O. Jenkins that it was the understanding of the parties not to record it. It is apparent that Pearl E. Crable did not have any thought that the disposition of her property had been determined by a binding agreement. She believed she would have to dispose of it by deed or by will. Jay O. Jenkins continued to manage the farm rentals and pay them out the same as he always had before he and Pearl E. Crable became owners of the land, and his wife continued to do Pearl's laundry as she had for a number of years before any oral contract was alleged to have been made. According to the memorandum that Pearl E. Crable had on one instance, as testified to by a witness, for doing her laundry for a long time she wanted to give Jay's wife her car, as a favor. Jay admitted that he never took any steps to create a survivorship relation for Pearl in this matter. After her death he went to the courthouse to ascertain whether or not Pearl had ever recorded the deed, then he went to attorney Evans' office to find out if she had made a will, and while there informed Evans that her failure to record the deed showed that she intended he should have the farm. We believe that these actions on the part of Jay O. Jenkins are not such as to show a binding oral contract for the conveyance of real estate had with a deceased person.

We conclude that the appellants' evidence failed to establish a constructive or resulting trust as required by law.

We have examined the evidence of Jay O. Jenkins as to the conversations had with his sister Pearl E. Crable with reference to the oral agreement and the understanding between the two, and the objections as to the competency of said testimony made by appellees. We conclude that under section 25-1202, R. S. 1943, Jay O. Jenkins had a direct legal interest in the result of the action, and no exception occurred therein that would permit this testimony to be received, and it was error

not to sustain the appellees' objections thereto; further, by cross-examination on the appellees' part, they did not waive their objections to this testimony.

"When objection to the admission of evidence as to transactions or conversations with deceased has been properly made by the representative of a deceased person and erroneously overruled, the party making such objection does not waive his rights under the statute by cross-examining the witness on the same matters or offering direct evidence thereon to meet that erroneously admitted." In re Estate of House, 145 Neb. 866, 18 N. W. 2d 500, 159 A. L. R. 401.

In view of our holding, other assignments of error need not be discussed, and are without merit. The judgment of the trial court is affirmed.

AFFIRMED.