ERNEST A. SMITH, APPELLEE, V. HARRY KINSEY ET AL., APPELLEES, LEO E. SELL, INTERVENER, APPELLANT.

28 N. W. 2d 588

Filed November 7, 1947.    No. 32238.

*Dryden & Jensen, Paul I. Manhart,* and *M. J. Buckley,* for appellant.

*Davis & Vogeltanz,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and THOMSEN, District Judge.

MESSMORE, J.

This action in equity was brought by the plaintiff to require the defendants to make an accounting; to have the court decree that certain of the defendants who hold

title to the real estate in question hold the same as trustee for the plaintiff and the intervener in this action; and further, to require the defendants so holding title to convey the same to the plaintiff or intervener in accordance with the terms of a previous oral agreement. Prior to the date of trial the plaintiff died, and the case proceeded to trial on the petition in intervention, the issues raised therein and the relief sought being substantially the same as contained in the plaintiff's petition. The petition in intervention prayed that title be quieted in the intervener and the deed to the defendant Lueck be set aside and held for naught. The defendants' answer to the amended petition in intervention, so far as need be considered here, denies the affirmative allegations of the amended petition and the amended petition in intervention, and prays for a dismissal of the intervener's amended petition in intervention. The defendants, by counterclaim, seek to collect rent from the intervener as lessee of the real estate here involved.

The pleadings are voluminous, containing allegations of fact which the respective parties contend support their positions, and need not be set out. The material and relevant facts contained therein, as reflected by the record, will appear in a resume of the evidence.

The record discloses that Horace H. Bristol resided with a brother of the plaintiff. The plaintiff was desirous of buying what is known as the Lutz place, adjacent to Arcadia, Nebraska. In the latter part of 1926, Horace H. Bristol informed his landlord he was going to move and live with the plaintiff, for the reason that he had a business deal with the plaintiff, and he had loaned him some money for the purpose of purchasing the Lutz place. The plaintiff did purchase the Lutz place on October 4, 1926.' Horace H. Bristol moved in and boarded and roomed with the plaintiff until he suffered a stroke and died on March 22, 1927. On November 18, 1926, the plaintiff executed and delivered to Horace H. Bristol his promissory

notes aggregating $5,000, secured by a first mortgage on such land. This mortgage was filed of record December 2, 1926.

A son of the plaintiff testified that Horace H. Bristol resided with his uncle for a number of years, and later lived with his father's family until his death. He related the substance of a conversation occurring prior to November 18, 1926, between his father and Horace H. Bristol, wherein his father was interested in buying the Lutz place. Bristol said he would help finance the deal if the plaintiff would permit him to live in his home the rest of his life. He would loan the plaintiff $5,000 at a reasonable rate of interest, and would pay five dollars per week board and room for the period of time he lived there; the plaintiff to pay the interest on the mortgage in cash each year. Then, in the event that he, Bristol, should die, the mortgage was to be canceled, provided his half brother Andrew Bristol should predecease him. If not, the interest was to be paid to Andrew Bristol until his death, and then the notes and mortgage were to be canceled. He further testified, after Horace H. Bristol died Andrew Bristol came to their home and in the presence of this witness his father fully informed Andrew about the agreement between Horace H. Bristol and himself, and as the same related to Andrew. Andrew acquiesced that the transaction was proper and should be carried out in accordance with the terms thereof. Defendants' evidence denies that Andrew Bristol ever came to the plaintiff's home after the death of Horace H. Bristol. The record shows that Andrew Bristol was 88 years of age at the time and a resident of Connecticut. There also appears a power of attorney issued by him to transact business with reference to Horace Bristol's estate.

The plaintiff continued to pay the interest until Andrew Bristol died, the date of his death being in December 1929. The witness also related, in substance, a

conversation between his father and Horace H. Bristol, wherein the latter informed his father he had notified Mr. Kinsey, an officer of the Arcadia bank, of the arrangements between himself and the plaintiff. This witness remembered a deed received by his mother, who was estranged from his father, while she was in California, conveying this real estate to the intervener. His mother informed him she had signed the deed and sent it back.

Lutz testified that he was negotiating a sale of his place to the plaintiff and finally sold it to him when Horace H. Bristol informed him of the oral agreement between himself and the plaintiff and his reason for making such a deal. He also had correspondence from the plaintiff with reference to the oral agreement which was to the same effect. Lutz testified that Kinsey was handling the matter. Lutz corresponded with Kinsey, informing him of the transaction from his standpoint.

Kinsey testified he knew Horace H. Bristol during his lifetime, that he was a customer of the bank. Kinsey had drawn the notes and mortgage in question. Upon examination of the same after the death of Horace H. Bristol, he found one of the notes had outlawed. He thereafter corresponded with H. Wilber Bristol, a nephew of Horace H. Bristol, with reference to the matter. H. Wilber Bristol, in reply to such correspondence, requested Kinsey to employ counsel to administer the estate of Horace H. Bristol. Proceedings were started and H. Wilber Bristol was appointed administrator.

The plaintiff filed a claim against the estate for board and room and other items, from February 14 to March 22, 1927, in the amount of $40.95. The claim was paid and the plaintiff receipted in full.

By virtue of the estate proceedings, the mortgage became the property of Andrew Bristol. The estate of Andrew Bristol was administered and his sons, H. Wilber Bristol and Gideon C. Bristol, became the owners of the mortgage.

H. Wilber Bristol testified to negotiations had with the plaintiff about the mortgage and the payment thereof after the death of Horace H. Bristol. The plaintiff paid the interest in the amount of $300 per annum to H. Wilber Bristol for the years of 1927, 1928, and 1929, and no interest payments were made by the plaintiff thereafter.

In correspondence appearing in the record between H. Wilber Bristol and the plaintiff, it is apparent the plaintiff recognized the mortgage as his indebtedness. He informed H. Wilber Bristol he was endeavoring to obtain a loan, and was requesting a reduction of the mortgage indebtedness so that he could accomplish such purpose. This is evidenced by two letters written by the plaintiff to H. Wilber Bristol dated September 11 and September 17, 1936. This witness further testified the plaintiff never made any claim in writing or otherwise that the mortgage was satisfied by virtue of his oral agreement, but orally admitted to him on occasions of owing the mortgage debt.

There appears in evidence a letter dated July 6, 1937, written by this witness to Kinsey, wherein he expressed the hope that the plaintiff would be able to make arrangements to keep the place so that foreclosure proceedings could be avoided. Six months thereafter proceedings to foreclose the mortgage in question were instituted.

The intervener related the circumstances under which he obtained a deed when he purchased the land on February 8, 1937. The deed was lost, and there appears in the record a deed dated February 8, 1937, filed of record in June 1940, subject to a $5,000 mortgage signed by the plaintiff, but not signed by the plaintiff's wife. The intervener went into possession of the land March 1, 1937, and proceeded to farm it. In the latter part of August 1937, the intervener contacted the defendant, Kinsey, at the Arcadia bank, with reference to the deed which he took with him, and with reference to

the notes and mortgage. He testified that he was cognizant of the agreement between Horace H. Bristol and the plaintiff prior to the time he purchased the land, having obtained the information from the plaintiff. There are conversations in the record between the intervener and Kinsey, held at different times, wherein the intervener explained to Kinsey the conditions of the purchase of the land. Kinsey felt that the conveyance, lacking the signature of the plaintiff's wife, was ineffective. The intervener testified that Kinsey suggested to him that the mortgage should be foreclosed, the interest on the notes figured, and he would bid the property in for such amount and by doing so, cure the imperfection in the deed, and the mortgage then would be canceled in conformity with the oral agreement existing between Horace H. Bristol and the plaintiff; that the intervener would not be served with summons or other papers, but would be kept out of the foreclosure proceedings, and when the property was bid in, the title would eventually rest in the intervener and the matter would be settled with the only expense to the intervener being the costs, payment of back taxes, and attorney fees. These foreclosure proceedings were instituted on January 8, 1938. However, the intervener and his wife were served with summons. The parties designated in the foreclosure proceedings were John Doe and Mary Doe, his wife. The intervener being in possession, the record of the foreclosure proceedings was made to conform with the fact that the intervener and his wife were tenants in possession. The plaintiff filed a motion for security of costs; the motion was not pressed and plaintiff was granted an 11-months stay. The intervener made no defense in the foreclosure action. After receiving the summons the intervener again contacted Kinsey and called his attention to the fact that he and his wife had been served with summons, contrary to the agreement between himself and Kinsey. He testified Kinsey assured him that the matter would be

taken care of according to his agreement with him, and that there must be some mistake. The intervener also informed Kinsey that he had expended considerable money in improvements on the land and had made total payments in the amount of $1,338.56. The amount of the improvements placed on the land by the intervener is questioned as to the value thereof in the defendants' evidence.

Kinsey denied that he ever had a conversation with the intervener wherein he ever made an agreement with him that the land would be foreclosed and the intervener could buy it under the terms and conditions as testified to by the intervener. He admitted the intervener brought the deed to the bank, and he did tell him the deed was no good because the plaintiff's wife had not signed it.

The mortgage went to decree February 24, 1938. The property was bid in by H. Wilber and Gideon C. Bristol. Sheriff's deed was recorded on September 7, 1939. The land was rented to the intervener for the year 1939.

Certain correspondence is in evidence whereby H. Wilber Bristol and Gideon C. Bristol arranged to sell the land to the intervener for $2,500, subject to taxes, if he could raise the money. Other correspondence discloses the intervener failed to obtain the loan and thereafter, on December 5, 1939, the Bristols sold the land to the defendant Lueck for $2,000, subject to taxes from 1931 to 1937, and Lueck filed his deed December 23, 1939.

A writ of assistance was issued against the intervener on February 7, 1940, and returned March 4, 1940.

The defendant Otto R. Lueck testified that in conversations and visits between the intervener and Lueck, the intervener informed Lueck that he was endeavoring to procure a loan and buy the land, and Lueck understood that the intervener was endeavoring to do so and, in view of this understanding, told the intervener if he could procure the loan by March 1, that he, Lueck, would turn over all of his interests to the intervener, provided he could receive the return of his money.

He further testified that he never heard of an agreement whereby the plaintiff or intervener was to obtain the title to the land by paying up the taxes and costs of foreclosure without any additional payment, until this action was started.

The witness Hanson testified that as an attorney he was consulted by the intervener with reference to the land in controversy. His understanding was to the effect that the intervener had purchased the land for the amount of $1,338 from the plaintiff. In a conversation with Kinsey, this witness told him the intervener had paid the purchase price, except the taxes and foreclosure costs which he was to pay when he got title from the Bristols. He further testified that Kinsey told him he knew the agreement was that the land was to be conveyed to the intervener by the intervener paying the taxes and foreclosure costs, however, the Bristol heirs were demanding $2,000, and he could not turn a hand; it would have to be paid before he could do anything.

The foregoing substantially constitutes the facts upon which the court entered a decree finding generally against the intervener and for the defendants. On the counterclaim of the defendants, the court entered judgment in favor of H. Wilber Bristol and Gideon C. Bristol in the amount of $300. The court further quieted title to the land in Otto R. Lueck, and taxed the costs of this action to the intervener. Upon the overruling of the motion for new trial, the intervener appeals.

The intervener, appellant, asserts that there are two transactions involved in this appeal, the first being the oral agreement between Horace H. Bristol and the plaintiff which is set forth in the resume of the evidence and in the interest of brevity will not be repeated, and the second, that there was an oral agreement between Kinsey, as the agent of H. Wilber Bristol and Gideon C. Bristol, and the intervener, in substance as follows: That in order to clear the title to this land and dispose of the

interest of the estranged wife of the plaintiff, the mortgage was to be allowed to be foreclosed and the intervener was to pay the expense of the foreclosure and the taxes, and was thus to receive a deed of reconveyance. For the purpose of the instant case these two alleged oral agreements are interrelated.

The appellant predicates error on the part of the district court in that the decree of the court is not sustained by sufficient evidence and is contrary to law. The appellant further contends the court erred in permitting the defendants to recover on their counterclaim.

It is the contention of the appellant that the facts as disclosed by the record create and constitute a constructive trust. A constructive trust has been defined as follows: "A constructive trust is a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." Restatement of the Law, Trusts, § 1, p. 5. See, also, Wilcox v. Wilcox, 138 Neb. 510, 293 N. W. 378; Fisher v. Keeler, 142 Neb. 728, 7 N. W. 659; O'Shea v. O'Shea, 143 Neb. 843, 11 N. W. 2d 540.

Appellant cites Restatement of the Law, Restitution, § 181, p. 727, as follows: "Where the owner of an interest in land which is about to be sold to satisfy a claim refrains from preventing the sale or otherwise protecting his interest, because of an oral promise of another to buy in the interest and reconvey it to the owner, and the agreement is unenforceable because of the Statute of Frauds, and the other buys in the interest and refuses to perform his promise, he holds it upon a constructive trust for the owner." Also, section 180, p. 727: "The rule stated in this Section is applicable whether or not the purchaser is in a fiduciary or confidential relation to the transferor." And subsection (e), p. 729: "The rule stated in this Section is applicable

where the owner was induced by the oral promise of the purchaser to refrain from preventing the sale. It is applicable not only where the owner had cash available for redeeming the land and preventing the sale and was induced not to redeem by the oral promise of the purchaser, but also where the owner could have borrowed the money from others and thus have prevented the sale."

In view of the cited authorities, it becomes necessary to review certain sections of the statute of frauds.

Section 36-103, R. S. 1943, provides: "No estate or interest in land, other than leases for a term of one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by operation of law, or by deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same."

Section 36-105, R. S. 1943, provides: "Every contract for the leasing for a longer period than one year, or for the sale of any lands, shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made."

Section 36-104, R. S. 1943, provides: "Section 36-103 shall not be construed * * * to prevent any trust from arising or being extinguished by implication or operation of law."

Section 36-106, R. S. 1943, provides: "Nothing contained in sections 36-101 to 36-106 shall be construed to abridge the powers of a court of equity to compel the specific performance of agreements in cases of part performance."

"In considering cases of this character, where one is claiming the estate of a person deceased under an alleged oral contract, the evidence of such contract and the terms of it must be clear, satisfactory and unequivo-

cal. Such contracts are on their face void as within the statute of frauds, because not in writing, and, even though proved by clear and satisfactory evidence, they are not enforceable unless there has been such performance as the law requires. The thing done, constituting performance, must be such as is referable solely to the contract sought to be enforced, and not such as might be referable to some other and different contract—something that the claimant would not have done unless on account of the agreement and with the direct view to its performance—so that nonperformance by the other party would amount to fraud upon him." Overlander v. Ware, 102 Neb. 216, 166 N. W. 611; Taylor v. Clark, 143 Neb. 552, 10 N. W. 2d 495; Baker v. Heavrin, *ante* p. 766, 29 N. W. 2d 375; Crnkovich v. Crnkovich, 144 Neb. 904, 15 N. W. 2d 66.

A mere oral promise to bid in property at a foreclosure tax sale or redemption sale, and convey it to the owner upon being reimbursed, is a contract for the sale of land which cannot be enforced by reason of the statute of frauds. See 42 A. L. R. 78, and cases cited in annotation.

With the foregoing authorities in mind, the question is whether or not the evidence is sufficient to meet the authorities under appellant's contention.

With reference to the oral agreement between Horace H. Bristol and the plaintiff, it seems clear from the evidence that the plaintiff did not rely upon the fact that such oral agreement was made. He filed a claim against Horace H. Bristol's estate for board and room that was owing to him, and this was the only claim that he filed against the estate. He was paid, and receipted in full. Further, he negotiated with the defendant, H. Wilber Bristol, with reference to retaining the property, attempting to get the amount of the loan reduced so that he might be able to obtain a loan and keep the property. He appeared in the foreclosure action and filed a motion for security for costs and was granted an 11-months stay. At no time in any proceeding affecting the notes

or mortgage wherein he was mortgagor did he ever contend that the notes and mortgage had been canceled by the oral agreement, except when he filed the instant case January 23, 1941.

With reference to the second oral agreement raised by the intervener as between himself and Kinsey as the agent of the defendants H. Wilber Bristol and Gideon C. Bristol, this intervener was a party to the mortgage foreclosure action. He did not defend against it or claim any interest in the mortgaged property at that time. He did endeavor to obtain a loan and buy the land from the Bristols for $2,500. He failed to obtain such loan and finally, by virtue of a writ of assistance, left the land. There would be nothing for Kinsey or the Bristols to gain by any such agreement. Kinsey had no authority to make any such an agreement, and held no interest in the mortgaged property. The only element of agency that involves him in this litigation is the commission he charged for the sale of the property to Lueck. Lueck was willing to give this intervener the chance to purchase the property and repay him for what he had in it. It seems quite clear that Lueck had no knowledge of the oral agreements as contended for by the intervener in this action.

From an analysis of the evidence, the intervener has failed to prove a constructive trust by clear, satisfactory, and convincing evidence. The authorities cited by the appellee, and heretofore set forth, show that there was no such performance upon the part of the intervener that would take this case out of the statute of frauds. Under the authority of Taylor v. Clark, *supra*, Crnkovich v. Crnkovich, *supra*, and other authorities heretofore cited, and in view of the sections of the statutes of frauds heretofore cited, we conclude the judgment of the district court is right, and is therefore affirmed.

AFFIRMED.