ANNA M. ANDERSON ET AL., APPELLEES, v. ARNOLD J. ANDERSON ET AL., APPELLANTS.

36 N. W. 2d 287

Filed March 11, 1949. No. 32472.

*J. R. Swenson,* for appellants.

*Fred S. Jack* and *John A. McKenzie,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by plaintiffs who are widow and children of one Elmer S. Anderson, deceased, against the defendants all of whom are children of Charles P. Anderson, deceased, except Josie Anderson who is the wife of Clarence A. Anderson, the purpose of which is to have quieted in plaintiffs title to the northwest quarter and the north half of the southwest quarter of Section 19, Township 22 North, Range 10 East, in Burt County, Nebraska, record title to an undivided one-half of which, up to July 1, 1938, the date of the death of Charles P. Anderson, resided in him and title to the other one-half in Elmer S. Anderson.

Trial was had to the court and a decree was entered

granting the relief prayed by plaintiffs. A motion for new trial was filed and overruled. From the decree and the order overruling the motion for new trial the defendants have appealed.

There are numerous errors assigned as grounds for reversal. In order that they or such of them as are pertinent to a determination of this appeal may be properly considered it appears necessary to describe in some detail the issues as presented by the pleadings and the manner in which they were set out and also the family background in its changing aspects over a period of about 30 years before the commencement of this action which last date was June 20, 1947.

As to the family background, Charles P. Anderson was the father of Elmer S. Anderson, deceased, and of all the defendants herein except Josie Anderson. At the time of his death he was a resident of Burt County, Nebraska. He died intestate July 1, 1938, and his estate was probated in Burt County. Elmer S. Anderson was a resident of Burt County. He died intestate March 22, 1940, and his estate was probated also in Burt County. The plaintiffs are his heirs at law.

By warranty deed dated February 23, 1920, one Alfred Olson and Signe Olson, his wife, conveyed the land which has been described to the said Elmer S. Anderson and the said Charles P. Anderson for a stated consideration of $67,900, which deed was recorded on March 8, 1920. The record title remained thus except as it was affected by the two probate proceedings mentioned, the probate of the will of Caroline Anderson, widow of Charles P. Anderson, who died in 1946, and a deed from Clarence A. Anderson to Caroline Anderson, until the entry of decree in this case in the district court.

Plaintiffs as heirs of Elmer S. Anderson, deceased, filed the petition herein on June 20, 1947. The declared cause of action was based on a claim that they were entitled to have title quieted in them as heirs. They

alleged that Elmer S. Anderson purchased the land by written contract dated May 23, 1919, pursuant to which by the warranty deed hereinbefore referred to the land was conveyed to Elmer S. Anderson and Charles P. Anderson. They alleged that Charles P. Anderson invested no money or property in the land and contributed nothing in payment or upkeep of the same; that he was never in possession; that he never claimed to be an owner; and that he had no interest therein save and except that he assisted in the purchase by loaning to Elmer S. Anderson certain funds which had long since been repaid.

On June 26, 1947, plaintiffs filed an amended petition which was in substance the same as the earlier one except that in this one was set out the contract of May 23, 1919, by which plaintiffs alleged that Elmer ·S. Anderson purchased the land.

On December 5, 1947, plaintiffs filed another amended petition and it was on this one that the cause was tried. In this petition the declarations as to the manner of acquisition and the place of repose of title were the same as those of the other two petitions, however the alleged basis upon which they claimed the right to have title quieted in them materially departed from the allegations of the other petitions.

In this last petition plaintiffs alleged that the name of Charles P. Anderson was placed in the deed from Alfred Olson and Signe Olson pursuant to an oral agreement between Charles P. Anderson and Elmer S. Anderson, which agreement provided that Charles P. Anderson was to loan to Elmer S. Anderson such sums of money as Elmer S. Anderson might desire to use in his business; that the deed was to be taken in the name of Charles P. Anderson as one of the grantees to secure the repayment of such sums; that Charles P. Anderson was to execute a deed to Elmer S. Anderson which should release of record the apparent interest of Charles P. Anderson; that such deed should be placed in escrow

so that when Elmer S. Anderson had repaid all sums so advanced under the agreement the escrow holder would deliver said deed to Elmer S. Anderson thereby releasing of record all apparent interest of Charles P. Anderson; and that as a part of the agreement and pursuant thereto Charles P. Anderson did execute the deed which was to be placed in escrow.

They alleged that the oral agreement was made at the home of Elmer S. Anderson; that the date of the deed to be placed in escrow and the name of the escrow agent are unknown; and that the whereabouts of the deed is unknown and cannot be ascertained.

They further alleged that the exact amount of money advanced pursuant to the agreement is unknown but that it approximated $5,000, all of which had been repaid and that therefore and because thereof the defendants had no right, title, or interest in the land in question.

They further alleged that any right that the defendants had in the land has been barred by the statute of limitations.

While the foregoing is a summary of the pleaded cause of action on which plaintiffs went to trial the record discloses that in an important respect by their evidence they submitted it on a different theory. Instead of submitting it on the theory that Charles P. Anderson became a named grantee in the deed to secure the repayment of loans made by him to Elmer S. Anderson of money to use in his business they submitted it on the theory of security for repayment of the advancement of a part of the purchase price of the land. There is no competent evidence whatever tending to support a contention that the alleged oral contract had any relation whatever to anything except an advancement of a part of this purchase price.

The answer on which the case was submitted after generally denying the allegations of the petition set forth in effect, among other things not necessary to be repeated or summarized here, that Charles P. Ander-

son acquired an undivided one-half interest in this land by purchase thereof by reason of the fact that he furnished one-half of the consideration for the purchase and that he was the owner of such interest at the time of his death and further that Elmer S. Anderson and these defendants, except Josie Anderson, as heirs, together with certain devisees of Caroline Anderson, succeeded to the interest and all of the rights which he had at the time of his death.

The plaintiffs as a step in their effort to sustain their contentions sought to prove that in the first instance and on May 23, 1919, Elmer S. Anderson purchased this land by written contract from Alfred Olson. The only evidence offered in proof of this is what on its face purports to be a copy of a written contract, identified as exhibit No. 1, between Alfred Olson and Elmer S. Anderson. The exhibit is in nowise authenticated by any witness except that plaintiff Anna M. Anderson testified that it was a document kept among the papers of Elmer S. Anderson. She testified that the names of the purported contracting parties appended thereto were not their signatures. The exhibit was received in evidence over appropriate objection of the defendants. The ruling in this respect is presented here by assignment of error.

The district court admitted the exhibit not on the basis of proof of authenticity and upon identification by someone having knowledge of its execution but under the "ancient document" rule, a rule which permits of the admission in evidence, without direct proof of their execution, of instruments which have been in existence for more than 30 years and appear to be valid on their face and which come from proper custody. 20 Am. Jur., Evidence, § 935, p. 786.

The rule appears to have recognition in this state. It was considered and discussed in Peterson v. Bauer, 83 Neb. 405, 119 N. W. 764.

As pointed out in Peterson v. Bauer, *supra*, and else-

where and by that which inheres in the rule itself, the rule can have no application to the instrument under consideration here.

In the first place, as shown by the evidence, neither this instrument nor the original instrument, if there was an original, of which it purports to be a copy, was more than 30 years old.

In the second place the reasoning of Peterson v. Bauer, *supra,* makes it clear that where the authenticity of an ancient document is brought into question it ought not to be admitted without some proof of execution by the maker or makers. Anna M. Anderson brings authenticity into question, in truth she shows that it is not an instrument having binding force and effect, by her testimony that the purported signatures appended are not the signatures of the named contracting parties. See, Applegate v. Lexington & Carter County Mining Co., 117 U. S. 255, 6 S. Ct. 742, 29 L. Ed. 892; Barr v. Gratz, 4 Wheat. (U. S.) 213, 4 L. Ed. 553.

In the third place the rule applies only to original instruments and not to mere copies. 20 Am. Jur., Evidence, § 935, p. 786; McCleery v. Lewis, 104 Me. 33, 70 A. 540, 19 L. R. A. N. S. 438.

We therefore conclude that the exhibit was erroneously admitted in evidence and that in consequence thereof and of the fact that there was no other evidence of purchase of the land ahead of the deed of conveyance to Elmer S. Anderson and Charles P. Anderson our consideration of the issues must start at that point.

Starting at that point the record discloses that a warranty deed already referred to herein was executed wherein Elmer S. Anderson and Charles P. Anderson were named as grantees. The consideration was $67,900. By the terms of the deed the grantees took the land subject to two mortgages, one for $16,000 and the other for $3,500.

The record reasonably discloses that the consideration was paid as follows: The two mortgages mentioned

were assumed, the grantor took back a mortgage for $13,000, and the balance which was in the amount of $35,400 was paid in cash.

Of the cash balance $31,590 came as the proceeds of the sale of a farm referred to as the Manley farm, title to which stood at the time of sale and for a considerable period of time prior thereto in the names of Elmer S. Anderson and Charles P. Anderson. Of the remaining amount $1,941.67 was paid by check of Charles P. Anderson payable to Elmer S. Anderson and endorsed by him. Presumably the remaining amount was paid by Elmer S. Anderson. Plaintiffs claim this to be true and defendants do not contend otherwise. It therefore appears on the face of the record without explanation that each of these two obligated himself and contributed within a few dollars equally to the payment of the consideration for the purchase of this land.

Plaintiffs contend and attempted to prove that though Charles P. Anderson held title with Elmer S. Anderson to the Manley farm the sale price of which went into the purchase of the land in question he had no interest therein and that the proceeds of that sale were entirely the property of Elmer S. Anderson and that payment of that amount was by him and that the only amount paid by Charles P. Anderson was $1,941.67. It is to this amount that their evidence to support the oral agreement, its obligation, and its satisfaction applies.

It becomes apparent from all of this that the first question for consideration is that of whether or not the plaintiffs have sustained their burden of proving the oral agreement which is the basis for their claimed right to relief in this action.

The only evidence adduced to sustain the allegation that there was an oral contract and the terms thereof is found in the testimony of the plaintiff, Anna M. Anderson, and in documents identified or referred to by her. The same is true as to the matter of performance pursuant to its terms.

The record of the direct testimony of this witness, with omissions of objections and rulings thereon, conversational interchanges, and questions and answers containing nothing informative, beginning with question No. 203 and ending with question No. 234, is as follows: "Q- Mrs. Anderson, between the time that this contract was signed, Exhibit 1, which has not been offered in evidence, on May 23, 1919, and the time that the deed was signed and the money was paid over, did you hear any conversation between your husband and Charles P. Anderson with reference to loaning money or anything of that kind? * * * Q- Did you hear the conversation? * * * A- I heard the conversations. Q- You have got the question in mind? * * * A- Yes; I heard the conversation, but I didn't take part in it. Q- Where did this conversation take place? A- Well, it was at home there. I just heard them talking over it and I listened, but I didn't take part in it at any time. * * * Q- I wish you would tell us what you heard and said with reference to Charlie loaning money to Elmer? * * * A- Well, when they bought the farm he wanted his dad to advance money, and when he paid off his father - he said he wanted his father to be on the deed, and when it was paid off his father was to give us the deed to the property. * * * Q- Was there anything said in that conversation that you heard there with reference to any other transaction had between the parties? * * * A- Yes; Grandpa - C. P. Anderson — Q- I want you to tell as near as you can what you heard them say and what was said? A- I can't tell you exactly. I was busy there and I just couldn't only hear just parts of their conversation. I had that cranky baby, and he is sitting over there * * *. Q- Tell us as near as you can what was said? A- Grandpa said he would put his name on the deed and he would keep it there until Elmer had got this paid off, and then he would turn it over to Elmer. Q- What I am asking about now particularly is when they were talking about that and you heard that. Was

there anything said in that conversation with reference to any other deal they had with reference to a similar nature or character? What I am referring to or getting your attention to is about the Manley Place. A- Oh, yes, that was when we first started out. Of course, he advanced that money — * * * Q- I want you to tell what you heard them say at that time with reference to the Manley deal, if there was anything said about it? A- He would be on that deed and he said he would stay on this deed with Elmer then until he paid it off. I just didn't talk with them or ask them anything about it. * * * Q- You bought the Manley Farm; your husband had the Manley Farm and bought it and you lived on it for ten years? A- Yes. Q- You knew how he paid for that farm? A- Yes. * * * Q- Just answer my question. Now, you had talked that over with your husband on a number of occasions? A- Yes. Q- Got information about that? A- Yes. Q- Now, in this conversation you overheard at the home where you and your husband and his father were, was there anything said with reference to the money he had advanced on the Manley Place or anything of that kind? * * * Q- Have you got the thing in mind? A- Well, all I can say is that grandpa wanted that money that he had advanced to Elmer to be — he would put that on the deed and then Elmer was to pay him back. Q- That's what you heard in this conversation? A- Yes; that was to be paid back. When Elmer had gotten this all paid back then the deed was to have gone over to Elmer. * * * Q- You are referring now to the Manley Place; is that what was said with reference to the Manley Place? A- Yes; and it was the same on the other place. When Elmer wanted some advancement on the other place Grandpa said he would put that on the deed, and it would be the same on this place as it was on the Manley Place? Q- Do you know whether or not your father-in-law had advanced money on the Manley place? A- Yes he did. Q- And how much did he advance? * * * Q- How do you know the amount

he had advanced? Had you heard talk with reference to that? A- Well, I had heard Grandpa was going to advance $2000.00 and he had put a mortgage on part of his farm to get it. Q- He had put a mortgage on his farm to get that $2000? A- Yes. Q- And you know about that, don't you? A- Yes. Q- Was that mortgage put on at the time this $2000.00 was advanced? A- Yes. * * *" At this point one of the attorneys for the defendants was permitted to interrogate the witness pursuant to which the following appears: "Q- * * * Who told you that, Mrs. Anderson, that Mr. C. P. Anderson was going to advance $2000? A- Why, I knew it. Q- * * * Who told you? A- My husband told me that, that Grandpa was advancing it, and he was helping us, and we were starting out and he was helping us. Q- * * * And that's how you knew he was to advance $2000? A- Yes, it was. Q- * * * And that's the only reason you know, isn't it? A- And then the mortgages that Grandpa gave on it. Q- * * * Did you learn about that $2000 advance by what you say now to be made by Charles P. Anderson, in any other way except what your husband told you about it? A- Yes, we had looked it up. My attorneys helping out and looked it up, so that I know it. Q- * * * You know about it now because your attorneys have helped you look it up? A- Yes. Q- * * * Except what your husband told you and what your attorneys told you, you don't know anything about it, do you? Go ahead. * * * A- Well, I knew this was definitely advanced because I heard them say Grandpa was going to help us, and I knew that this money was advanced to Elmer. Q- * * * And you heard Elmer say so, didn't you? A- Yes, he told me. Q- * * * And that's how you knew it? A- Sure. How should I know it otherwise?" On cross-examination with regard to the arrangement for the purchase of the Manley farm the following appears: "Q- But it was on the basis of what Elmer Anderson told you that you testified on direct examination as to the arrangement

made between Elmer and his father to buy the land, isn't that true? A- Yes."

As to the allegation that as a part of the oral agreement pleaded there was or was to be executed a deed to be put in escrow there is no testimony of Anna M. Anderson that it was referred to in the conversation between Elmer S. Anderson and Charles P. Anderson before or at the time the farm was purchased. She testified that she first heard of it in 1933 as follows: "Q- When did you first learn about an escrow, Mrs. Anderson? A- It was when I heard Elmer talking with his father about this $14,000 mortgage. Q- That was in 1933? A- Yes." There is nothing more in the record with regard to the existence of the escrow deed except as to a search made therefore by the witness. It may be said therefore with confidence that there is a complete lack of competent proof of this portion of the alleged oral agreement.

We think it should be interpolated here, for facility in the discussion, that appropriate exception was taken to evidence either by objection at the time of offer or by timely motion to strike what shall be referred to and considered hereinafter as incompetent, or improper evidence, or evidence lacking probative value, as soon as incompetency or impropriety or the lack of probative value was made to appear.

In order to determine whether or not plaintiffs have adduced evidence sufficient to sustain the alleged oral contract and a right to recover it becomes necessary to ascertain at this point the character of proof required. This depends upon the character of relief they seek.

The matter of the escrow deed having been eliminated as it was by a failure of evidence in that regard, what plaintiffs attempted to do as to the other phases of the alleged contract was to establish an oral trust in real estate. See Cameron v. Nelson, 57 Neb. 381, 77 N. W. 771.

The opinion in Cameron v. Nelson, *supra,* points out

that such an agreement is violative of the statute of frauds. It is there said: "As an induction from all the cases it may be said that where it is practicable to enforce the oral promise without establishing any interest in the land itself, the statute does not apply; but where the right to recover depends upon the establishment of an interest in the land, the attempt is to raise an oral trust and must fail." See, also, Pollard v. McKenney, 69 Neb. 742, 96 N. W. 679; Norton v. Brink, on rehearing, 75 Neb. 575, 110 N. W. 669, 121 Am. S. R. 822.

The sections of our present statute of frauds to which this has reference are the following:

"No estate or interest in land, other than leases for a term of one year from the making thereof, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by operation of law, or by deed of conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same." § 36-103, R. S. 1943.

"Every contract for the leasing for a longer period than one year, or for the sale of any lands, shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made." § 36-105, R. S. 1943.

Section 36-106, R. S. 1943, is the following: "Nothing contained in sections 36-101 to 36-106 shall be construed to abridge the powers of a court of equity to compel the specific performance of agreements in cases of part performance."

This is an action to establish an oral contract declared void by the statute of frauds. Such a contract is unenforceable unless the evidence is sufficient to satisfy the requirements of section 36-106, R. S. 1943.

In order to satisfy the requirements of this section the burden was upon plaintiffs to prove an oral contract the terms of which were clear, satisfactory, and unequivocal, and also part performance, and that the acts done in

performance were referable solely to the contract sought to be enforced, and not such as might be referable to some other and different contract—something that Elmer S. Anderson would not have done unless on account of the agreement and with the direct view to its performance—so that nonperformance by the other party would amount to a fraud upon him. Overlander v. Ware, 102 Neb. 216, 166 N. W. 611; Taylor v. Clark, on rehearing, 143 Neb. 563, 13 N. W. 2d 621; Crnkovich v. Crnkovich, 144 Neb. 904, 15 N. W. 2d 66; Caspers v. Frerichs, 146 Neb. 740, 21 N. W. 2d 513; Hackbarth v. Hackbarth, 146 Neb. 919, 22 N. W. 2d 184; Garner v. McCrea, 147 Neb. 541, 23 N. W. 2d 731; Herbstreith v. Walls, 147 Neb. 805, 25 N. W. 2d 409; Baker v. Heavrin, 148 Neb. 766, 29 N. W. 2d 375; Smith v. Kinsey, 148 Neb. 786, 28 N. W. 2d 588; Riley v. Riley, *ante* p. 176, 33 N. W. 2d 525.

We are of the opinion that the evidence of plaintiffs is deficient in these respects. In the evidence which has been quoted which is substantially all of the affirmative evidence relating to this subject, even if all of it were considered as having probative value and as being admissible as it may not since that portion which depends upon information furnished by Elmer S. Anderson to the witness must be rejected as hearsay, we fail to find clear, satisfactory, and convincing evidence either of the contract pleaded, or that contract with the element of an escrow deed eliminated, or any other contract.

The total effect of this evidence is that this witness overheard a conversation in which Elmer S. Anderson and Charles P. Anderson agreed that the land in question would be purchased with title taken and held in the two of them the same as the Manley farm was purchased and held until sold; that the purchase money received from the Manley farm would be used in the purchase of this land; and that when Charles P. Anderson had been paid back the money he had put into the transaction he would take his name off the deed.

As to uncertainties there is no competent evidence as

to the amount of the purchase price contributed by Charles P. Anderson. The witness assumed to testify that the amount was only $1,941.67 but the evidence was clearly incompetent. Again it appears evident that any agreement would have embodied something with relation to mortgages assumed and placed on the land as a part of the purchase price on which Charles P. Anderson obligated himself jointly with Elmer S. Anderson. Incidentally at the time of the trial of this case there was a balance of about $12,000 still unpaid on a mortgage given in renewal of a purchase money mortgage which was given by Elmer S. Anderson and Charles P. Anderson.

Contributing to the uncertainty of the proof offered by the witness is a recital appearing in the petition for the settlement of the estate of her husband, Elmer S. Anderson, which petition bears her signature and was sworn to by her on July 24, 1943, in which recital it is stated that at his death Elmer S. Anderson had an undivided one-half interest in this land. The instrument was introduced on her identification as a part of cross-examination.

Contributing further to the uncertainties of plaintiffs' proof are negative inferences to be drawn from the absence of any evidence that Elmer S. Anderson during the life of his father or in his own lifetime laid claim to or made any effort to acquire the apparent interest of the father in this land although the effort made by plaintiffs herein was to prove that such interest as the father had became extinguished in 1937.

As to the element of performance nothing need be said except that certainty of the oral contract itself not appearing there is nothing to which to attach proof of performance.

We hold therefore that the evidence of plaintiffs was insufficient to sustain this cause of action and that, as contended by defendants in their first assignment of error, the district court erred in holding generally in favor of plaintiffs and against defendants and in decreeing accordingly. This conclusion renders unnecessary

consideration of the remaining asignments of error.

The decree of the district court is reversed and the action dismissed.

REVERSED AND DISMISSED.