HENRY NOETZELMANN, APPELLANT, V. RUDOLPH O.
NOETZELMANN ET AL., APPELLEES.

43 N. W. 2d 515

Filed July 19, 1950.  No. 32778.

*Blackledge & Sidner,* for appellant.

*L. D. Hurley* and *V. H. Halligan,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

This is essentially an action in equity for specific performance of an alleged oral contract the subject

of which is land in Garden County. The district court denied the relief asked by Henry Noetzelmann, appellant, sustained the claims of Rudolph O. Noetzelmann, one of the appellees, and quieted title to the land in him. A motion for a new trial by appellant was denied and he prosecutes this appeal.

The appellant alleged: Before and during 1924 he was part owner and actively engaged in the operation of an automobile and garage business in Alliance; that in the fall of that year appellee and Anna Noetzelmann, parents of appellant, sought to induce him to dispose of his interests therein and to return to the home community near Lewellen; that to accomplish this they orally offered appellant if he would do so, marry a woman who would live on a farm, and if they would reside on the land, the subject of this suit, operate and improve it, pay the parents during their lives an amount equal to a reasonable rental for the land, that the parents would construct a house thereon and at their death appellant should be the owner of the land and all improvements made thereon; that he accepted the offer, disposed of his business and property in Alliance, complied with all the terms thereof capable of performance, and he and his wife early in 1926 took and have since continued possession, occupancy, and use of the land; that appellant has in every respect promptly and fully performed all of the terms and conditions of the oral agreement obligatory upon him in reliance on and in performance thereof, and he is ready, able, and offers to continue during the life of appellee performance in accordance with the terms of the agreement; that Rudolph O. Noetzelmann, in violation of the agreement with appellant, has entered into a contract with Harry Nelson and Pearl Nelson for the sale and conveyance of the land to them; and that they had actual notice and knowledge of the possession and occupancy of the land by appellant. He asks that the existence of the oral agreement as alleged be adjudicated and enforced, sub-

ject to his continued performance of the terms thereof during the life of Rudolph O. Noetzelmann, and that the contract between him and his vendees be found and decreed to be of no force or effect.

Rudolph O. Noetzelmann denied the claims of appellant and alleged that the agreement as stated in his petition, if it existed, was abandoned by appellant, and that he entered upon the land in controversy as a tenant and had failed to farm the land in a proper manner or to pay the rental therefor. Appellee asks that the title to the land be quieted in him.

Henry Noetzelmann and Rudolph O. Noetzelmann are the contesting parties, and they are designated herein as appellant and appellee respectively.

Appellant asserts that the findings and decree are not sustained by the evidence and are contrary to law.

Appellee and Anna Noetzelmann, his wife, the parents of appellant, established their home on land in Garden County north of Lewellen in 1909 and continued there until they separated and were later divorced in 1937, except they spent a part of the time in Kearney since 1919. They had nine children. A son Ed was the oldest, and appellant is their second child. They were industrious, thrifty, and acquired extensive and valuable real estate consisting of about 3,000 acres of land and two residence properties in Kearney. All of it, except a farm near Lisco and the properties in Kearney, were near Lewellen. That was the home community. The land involved in this case is 240 acres near the family homestead, and after appellant and his wife moved on it in 1926 it was known and spoken of by members of the family and others as "Henry's place." Anna Noetzelmann conducted the negotiations for and made the purchase of this land in 1914. It was conveyed to her and she had the title, subject to any rights of appellant, until December 1937, when it was assigned to appellee in the division of property made in the divorce case between him and Anna Noetzelmann. The land was unimproved native

grassland and was purchased for $18 an acre.

Appellant spent his early life on the home place and worked with his parents and brothers and sisters. Sometime before he was 20 years of age he and his older brother Ed were conducting all of the operations upon all of the land owned by their parents near Lewellen. Appellant suddenly left the home and community, and his whereabouts was not known for a considerable time. The reason is not definitely shown. It is referred to in general terms—"some trouble or difficulty in the family" "what it was I (appellee) don't know * * *." It was then that appellee ordered Henry to, and he did leave home. There is no claim or showing that appellant was not dutiful, industrious, and obedient or that his conduct was not regular and proper. His relationship with his father was satisfactory. They "were always good friends." Appellant went to Alliance, worked in a garage, and became a partner with his employer. The situation was satisfactory to him. He was there until the fall of 1924. He had not seen or had any communication with or from his parents since he was driven from the home. The parents were concerned and distressed about the circumstances of his estrangement and absence. They attended church at Kearney. The subject of the sermon was the "Prodigal son." They were affected by the sermon. The mother became very emotional and stricken with grief. They left the service at the conclusion of the sermon and "we talked things over." The father wanted his wife to make an effort to get their son home again and "things would be all right." They discussed what they would offer him to return and agreed if he would do so that they would build a house on the land affected by this case so that he could get married, go on the place, improve it and farm it, pay the parents for the use of the land as long as they needed it, and "otherwise it was his home." She went to Alliance, found Henry engaged in the garage business, pleaded with him to return home, told him of the ar-

rangement discussed by her and his father, and ultimately Henry agreed to do so. He sold his property and business in Alliance and returned home with his mother.

Anna Noetzelmann, the mother, at that time owned the land involved in this case. She conducted and managed the family business and financial affairs so completely that checks written by her husband were dishonored by the bank. The bank account was in her name. She wrote the checks and paid the bills.

The day after her arrival in Alliance when she and Henry returned home appellee told appellant that if he would go on this land, remain there and build it up, it should be his home. It was said in another conversation with appellant in which both of his parents participated that if he remained on the land and built it up they would give him a deed for it. On another occasion in the presence of several members of the family appellee agreed that if Henry and his wife would live on the place the parents would build a house on it and put down a well, and if Henry would put other improvements on the land that it should belong to Henry when the parents died. After appellant occupied and improved the land, in a conversation had with appellee in which appellant mentioned that he had nothing to show the arrangement under which he had moved onto the land, appellee said to appellant in the presence of his wife that the place was his home and no one could ever take it from him— that appellee would see to that. Similar statements were made by appellee many times and as late as 1948. He told a neighbor of long acquaintance with the family that he had given Henry a home. There is testimony of a conversation in which appellant said to another acquaintance of the family in the presence of his father that when his parents were through with the place where he lived that it would be his, and appellee said that was true, " '* * * the place is going to be Henry's.' " When the right of appellant to remain on the land was challenged in 1937 he promptly, in an action in equity, as-

serted the oral agreement relied upon in this case and his performance thereof, and asked a decree of specific performance of the contract against his parents, who were the defendants in that case. That was sufficient to cause a discontinuance of any effort to dispossess him. His acts since he took possession of the land have been consistent with the agreement he claims was made in reference to it.

After appellant had occupied, improved, and operated the place for more than ten years in a manner wholly consistent with the oral agreement he claims, while a case was pending in the court where this case was tried, to which appellee was a party and in which the appellant alleged the existence of substantially the same agreement asserted by him in this case and sought specific performance thereof, the appellee in a case in the district court for Buffalo County, Nebraska, testified and offered to prove that he and his wife did have a talk in the presence of Henry about the kind of a deal that would be made with him if he went onto this place. That matter was discussed " '* * * sometimes on the inside of the house and sometimes in the yard.' " The offer of proof of appellee in that case was that at the time Henry came back from Alliance and went onto the place involved in this case there was an agreement verbally made between appellee and his wife and Henry that he should move on that place, improve it, make it his home, and pay to his father and mother during their lifetime one-third of the crops grown on the place, and, if he did, the parents would deed him the property, and acting and relying thereon appellant did move on the place and had stayed there for about ten years and had made improvements.

There were no improvements on this place until the spring of 1926, except a partial temporary fence, and about 60 acres had been broken and were tilled. It was leased when appellant returned in the fall of 1924. His parents agreed to build a house thereon at their expense

and he was to make all other improvements he desired at his expense. He married on December 5, 1925. The house and a temporary barn were built and a well put down in the spring of 1926, and he and his wife moved on the place and have continued to occupy it. He broke about an additional 100 acres. The balance is used for pasture, location of improvements, and garden. He has at his expense since he has occupied the land, as his time and finances would permit, made improvements thereon consisting generally of a new barn, chicken house, garage, bunkhouse, hog house and shed, brooder house, corncrib, granary, hog lots, fence and cross fences partly of barbed wire and partly woven wire with cedar posts, well and windmill, large cistern, a system for running water into the house, feed lots, garden, and about the homestead generally, wired the house for electricity, and installed a wind charger. He has planted and grown a grove of about a thousand trees, has planted fruit trees, berry bushes, shrubs, and flowers, and he has located and graveled driveways on and into the farm. He has used the land in a proper manner to the best of his judgment and knowledge since 1926. "Henry was considered by his father and the neighbors the best farmer in the neighborhood, and he is. He is a good farmer." Appellant since 1926 made all decisions of management, operation, and improvement of the land. There were no suggestions, directions, or instructions to him from appellee or any other person in reference thereto, and no one but Henry spent anything on the place. Appellee testified that the place was improved nicely, everything looked neat, and appellant has kept the land nice and clean.

Appellant paid the agreed amount to his mother each year until the land was assigned in the divorce proceedings in 1937 to appellee, except the payment for 1936 which was made to his father. Appellee and his wife had disagreed, separated, and were engaged in divorce litigation, and he persuaded appellant to make

the payment to him for 1936, and because of this the mother served notice on appellant to surrender possession of the land and commenced a case to recover possession from him, which was dismissed without trial.

Appellant paid appellee each year, after the land was awarded to him in 1937, the amount he was obligated to pay by the contract upon which he relies, except the year 1949. The crop for that year has not been divided or disposed of, except possibly one load of wheat, because of the contract for the sale of the land, but it is available for division when any conflicting claims to it are resolved. Appellant has acknowledged his obligation and willingness to continue to promptly and fully perform the terms of the contract during the life of appellee.

The value of the land in question in 1949 was $15,000, or about $63 an acre. Unimproved adjacent comparable land sold for $29 an acre. The difference in the two tracts of land was the manner in which the Noetzelmann land was improved, the fact that it had been cared for, the good farming methods used, and the fact that the place was clean.

The law is that one seeking specific performance of an oral contract for the conveyance of land has the burden of proving by a preponderance of the evidence a contract which is clear, satisfactory, and unequivocal in its terms; that he has performed the obligations imposed upon him by the contract to the extent they are capable of performance at the time of the commencement of the litigation; and that he is able and willing to, and will fully perform any remaining obligations as they become capable of satisfaction by him. Riley v. Riley, 150 Neb. 176, 33 N. W. 2d 525; Lunkwitz v. Guffey, 150 Neb. 247, 34 N. W. 2d 256; Anderson v. Anderson, 150 Neb. 879, 36 N. W. 2d 287; Jenkins v. Jenkins, 151 Neb. 113, 36 N. W. 2d 637. The evidence justifies application of the doctrine of Harrison v. Harrison, 80 Neb. 103, 113 N. W. 1042, as follows: "Where the acts performed by the plaintiff tend to show, not only that there was an agree-

ment, but also throw some light on the nature of that agreement, the evidence cannot be said to rest wholly in parol, the parol evidence being auxiliary to the proof afforded by the case itself." See, also, Peters v. Wilks, 151 Neb. 861, 39 N. W. 2d 793. The appellant has sustained the burden imposed upon him by the rules referred to and has shown by the greater weight of the evidence an oral contract in reference to the land involved of the character the law requires. He has performed all of the obligations of the contract now capable of satisfaction, and tenders prompt and full performance of the terms of the contract during the remainder of the life of appellee.

Appellee emphasizes the fact that he and his wife on January 2, 1931, gave a mortgage on the land to secure their note for $4,000 due one year thereafter. The mortgage was subsequently released. This under some circumstances might weigh heavily against a claim of a prior existing oral contract by the mortgagors to convey the land. It is, however, unimportant here. Appellant was not a party to the transaction, it was not for his benefit, and he realized nothing from it. It is not shown that he was consulted about it or that he knew of it at the time of the giving of the mortgage or when, if at all, he learned that the land had been encumbered by his parents.

A further requirement in a case of this character is that one seeking specific performance of such a contract has the burden of showing by a preponderance of the evidence that his acts relied upon to constitute performance were such as were referable solely to the contract sought to be enforced and not such as might be referable to some other contract. Proof must be made of something that the claimant would not have done except because of the agreement and with the direct purpose of its performance so that a failure of the other party to perform his obligations would be a fraud upon the parties seeking to enforce performance. Anderson v.

Anderson, *supra;* Winkelmann v. Luebbe, 151 Neb. 543, 38 N. W. 2d 334; Peters v. Wilks, *supra.*

Appellant and his brother were performing the operations on all the land owned by their parents in Garden County. Appellant was suddenly, for some cause no one has been able or willing to detail, driven from his home, so far as the record shows, without compensation or resource. He became estranged and remained away without communication to or from home or his parents. He was able to care for himself, and established himself in a business. His situation was satisfactory. He did not need or seek aid from, nor did he request the privilege to return home. He had severed all ties of home and relations. The parents sought to overcome the estrangement and bring their son back to the home community—possibly it may be speculated to make amends in some measure for his wrongful expulsion from home. This purpose was accomplished. It is improbable, with knowledge of the manner in which he was summarily driven from home and the long attendant estrangement, that he would have severed his satisfactory business association, sold his business and property, and returned to farming without a definite agreement for present income and future security. Likewise it is very doubtful that as a mere tenant appellant would have taken this land in its barren natural state, made substantial and costly improvements thereon, taken advantage of every opportunity to build it up by good farming methods, made and kept it clean and desirable, conducted all the operations, and made the improvements thereon for nearly a quarter of a century without suggestion, request, direction, or outlay on the place by the appellee or any other person. These acts and accomplishments are not characteristics of a tenancy relationship from year to year inherent in which is the hazard of a final termination at the end of any tenancy period. They are referable to a contract for an interest in and ultimate ownership of the subject of the improve-

ment and enhancement in value. In deciding if the acts of appellant were referable solely to the contract, he seeks to enforce, they must be considered in their light and in proper respect of all the other relevant facts and circumstances shown by the evidence. Riley v. Riley, *supra;* Harrison v. Harrison, *supra.*

The acts of appellant claimed to have been performance of the oral agreement were such as were referable solely to the contract he seeks to establish and enforce. They were of the character of things he would not have done except because of the agreement and with the direct purpose of satisfaction of its obligations.

This is a suit in equity. There is controversy as to the facts. Appellee denies there was any agreement with appellant by virtue of which he should receive title to the real estate involved herein, and that he was a mere tenant with no permanency of occupation or use of the land. This court is required to consider and decide this case on the evidence without regard to the conclusions of the district court, but to the extent that there is an irreconcilable conflict of proof on any question of fact, it may give due consideration to the fact that the district court saw the witnesses and their manner of testifying and that it accepted one version of the facts. Kuenzli v. Kuenzli, 150 Neb. 855, 36 N. W. 2d 247. This rule has been regarded in the examination and consideration of this case and in the conclusion that the finding and decree of the district court are contrary to the evidence and law; that appellant has satisfied the burden imposed upon him; has proved the existence of the oral agreement alleged by him; and has shown his performance of the terms and obligations thereof now capable of performance.

Harry Nelson and Pearl Nelson, appellees, by pleading and evidence show they knew appellant was in possession of the land since 1928. They lived on land which joined the real estate in this case on the south. They made no inquiry as to any interest of appellant in the

land before they contracted with appellee for its purchase. It has long been the rule that possession of real estate is notice to the world of the rights of the person in possession thereof and all his interests of which inquiry of him would elicit knowledge. Blum v. Poppenhagen, 142 Neb. 5, 5 N. W. 2d 99; Blum v. Voss, 139 Neb. 233, 297 N. W. 84. The contract of the Nelsons with Rudolph Noetzelmann for the purchase of the land is ineffective and invalid because of the prior existing agreement with appellant for title to the land upon his performance of the obligations thereof. It should be set aside.

Specific performance of the contract of appellant for title to the land as claimed and alleged by him herein should be enforced by a decree of the district court subject to and upon payment by him to appellee each year commencing with the year 1949 of one-third of what is produced on the land until the death of appellee.

The decree of the district court should be, and it is, reversed and remanded, with directions to the district court to enter a decree in this case in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.